Argued and submitted May 7, reversed and remanded for new trial
September 10, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRISTOPHER SCOTT PIERCE,
*Appellant.*

## CM0121185; A117231

76 P3d 172

George W. Kelly argued the cause and filed the brief for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for public indecency. He challenges the sufficiency of the evidence and the admission of certain testimony concerning prior sexual conduct. We reject without discussion defendant's challenge as to the sufficiency of the evidence. However, we conclude that the trial court erred in admitting the testimony and that the error was not harmless.

The record reflects the following evidence.[1] Defendant was charged with public indecency following an incident in which four witnesses claimed to have observed him manipulating his genitals in public. The four witnesses were Bolker, Bolker's stepbrother Isaacs, whom she was visiting that night, her sister, and a friend.

At trial, Bolker testified that she and the others were leaving Isaacs's house at approximately 12:30 a.m. As they were getting into their car, they observed defendant, who lived next door to Isaacs, standing in front of defendant's doorway. Bolker said that he stood there with his pants down and that "his hands were by his genital area." She said that, "I didn't see any like genitalia, but I could tell that his hand was like down there because of the outline like of the—and I could see moving." She further testified:

> "I wasn't really sure what he was doing. Like I tried not to—like I was just like oh, god, let's just go. I just figured he was like playing with himself, I guess.
>
> "* * * * *
>
> "I guess—like it was pretty dark. So I guess I'm not saying that I positively saw him masturbating, but I'm not really sure what else he'd be doing like—I don't really know."

Bolker's sister testified that she also saw defendant standing in the doorway with his pants down. She said that

---

[1] Because we address only the admissibility of evidence and whether any erroneous admission of it was harmless, we do not state the facts in the light most favorable to the state and, instead, describe "all pertinent portions of the record." *State v. Cunningham*, 179 Or App 359, 361-62 n 2, 40 P3d 1065 (2002).

she saw his hands in the groin area: "He might have been leaning * * * with one hand down. I can't quite remember."

Isaacs testified that he saw defendant "standing in his doorway, and it took him about five seconds, and I noticed that he pulled his pants down and he was doing something with himself." He said that he "assumed" that defendant was masturbating, but that "what I couldn't really tell was, you know, exactly what he was doing. I saw his hand down there. It looked like he was like playing a guitar or something, you know."

Isaacs also testified that he told his mother about the incident, but his mother was "afraid of retaliation if we pressed charges." Isaacs explained that there apparently had been a dispute between his mother and defendant over whether defendant had been using some of Isaac's mother's electricity and that the matter had not been resolved until the police, an attorney, and the landlord had intervened. He testified that he was not aware of the details of the conflict; he agreed, however, that his mother felt "pretty strongly" about it.

■ The state then questioned Isaacs about another incident that had occurred two months before the one that led to the charges. Defendant objected on the ground that the evidence would be unfairly prejudicial.[2] The trial court overruled the objection. Isaacs then testified about the incident:

> "Okay. [Defendant] called me over to his house early one morning, probably nine, ten o'clock, and said he had something he wanted to show me, and I went over into his house, and he asked if he could suck my penis. And I told him no, and that I wasn't into that kind of thing, and I felt very uncomfortable and I was going to leave, and at that point he said, 'Well, if you know anybody that would, I'm going to be laying in my bedroom with a blindfold on, and you or anybody you want could come in and I wouldn't even have to know.' "

---

[2] Defendant had objected to the line of questioning before trial, arguing that "it's incredibly prejudicial to my client, and it's more prejudicial than it could possibly be relevant * * *." The trial court overruled the objection. Defendant renewed the objection at the time of questioning. The trial court overruled the objection, commenting that "[w]e dealt with this before * * *."

The jury found defendant guilty. On appeal, defendant argues that the trial court erred in admitting the evidence of the incident between Isaacs and himself two months before the charged conduct. He argues that the evidence, if relevant, is unfairly prejudicial. He notes that the trial court did not even evaluate the extent to which the probative value of the evidence outweighed the danger of unfair prejudice and argues that, under *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), that alone is a ground for reversal and remand for a new trial. The state concedes that the court did not engage in the analysis that *Mayfield* requires. It argues that, nevertheless, reversal and remand are not required because the admission of the evidence was harmless.

OEC 403 provides, in part:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *."

In *Mayfield*, the Supreme Court held that,

"[i]n making this decision under OEC 403, the judge should engage in four steps. First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

302 Or at 645. The court held that "[t]he judge errs" if he or she fails to exercise discretion or fails to make a record that reflects the four-step analysis just described. *Id.*

In this case, the record does not show that the trial judge engaged in the four-step analysis that *Mayfield* requires. We therefore accept the state's concession that the

trial court erred and turn to the question whether that error was harmless.

██ OEC 103(1) provides that evidentiary error does not require reversal "unless a substantial right of the party is affected." Error does not affect a substantial right within the meaning of that rule if there is "substantial and convincing evidence of guilt and little likelihood that the error affected the verdict." *State v. Lotches,* 331 Or 455, 487, 17 P3d 1045 (2000). In this case, while there may have been sufficient evidence to send the case to a jury, the record falls short of reflecting "substantial and convincing evidence of guilt," particularly as to the element of defendant's intent. *See* ORS 163.465(1)(c) (elements of public indecency include proof of "intent of arousing the sexual desire of the person or another person"). The witnesses testified that, while they saw defendant with his pants down, they did not see exactly what he was doing and "just figured" or "assumed" that he was masturbating. In light of the lack of substantial and convincing evidence of guilt, we cannot say that the jury is unlikely to have been affected by evidence of a prior sexual encounter with one of the witnesses. We therefore conclude that the trial court's error was not harmless.

Reversed and remanded for new trial.