Submitted June 27, reversed and remanded October 1, respondent's petition for reconsideration filed November 10, and appellant's response to respondent's petition for reconsideration filed November 24, 2008, allowed by opinion January 14, 2009
See 225 Or App 296, _____ P3d _____ (2009)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## GORDON S. SEWELL,
*Defendant-Appellant.*

Sherman County Circuit Court
050036CM; A133727

193 P3d 1046

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his convictions for two counts of third-degree sexual abuse, ORS 163.415;[1] one count of furnishing alcohol to a minor, ORS 471.410(2); and one count of contributing to the sexual delinquency of a minor. ORS 163.435. Those convictions arose from several incidents in which defendant had sexual relations with, and furnished alcohol to, the victim. In two assignments of error, defendant challenges the trial court's admission of the victim's testimony that she was a virgin when she first had sex with defendant and her testimony that defendant refused to wear a condom during their sexual encounters. Defendant asserts that the evidence was inadmissible under OEC 403 because its prejudicial effect substantially outweighed its probative value.[2] We reverse and remand.

According to the state's evidence, the conduct giving rise to defendant's convictions occurred during the weekend of August 20 through August 22, 2004. At that time, defendant was 35 years old, and the victim was 17. The victim's eighteenth birthday was August 29, 2004. On August 20, defendant, the victim, and two other people had dinner together. After dinner, defendant bought alcoholic beverages, and defendant, the victim, and the victim's friend, G, spent the evening in the victim's residence drinking them. The victim testified that she and defendant later went into her bedroom and had sexual intercourse. G, who was sleeping in the living room, testified that she overheard them.

The victim testified that she and defendant had sexual intercourse again on the morning of August 21. Later

---

[1] ORS 163.415 provides:

"(1) A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being under 18 years of age.

"(2) Sexual abuse in the third degree is a Class A misdemeanor."

[2] OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

that day, defendant bought more alcoholic beverages and, that evening, defendant, the victim, and G once again drank the beverages in the victim's residence. G testified that she overheard defendant and the victim having sex in the victim's room later that evening. G left the residence on the morning of August 22. The victim testified that she and defendant stayed at her residence and that they had sexual intercourse twice that day. Defendant left the victim's residence that night. The prosecutor separately asked the victim, with respect to four of the five sexual encounters, whether defendant refused her request that he wear a condom. In each instance, the victim answered affirmatively that defendant refused to wear a condom.

Defendant was indicted on five counts of sexual abuse in the third degree, based on the five acts of sexual intercourse to which the victim testified. At trial, defendant's theory of the case was that he and the victim had a consensual sexual relationship and that they did not have sexual relations until she turned 18. Defendant also argued that, if he had sexual relations with the victim during the alleged weekend, it was because defendant did not know that the victim was only 17 years old at the time.

Defendant objected on the ground of relevance to the victim's testimony that she was a virgin before she first had intercourse with him. Defendant did not object to the evidence based on OEC 403. The trial court overruled defendant's relevance objection. As noted, the victim subsequently also testified that defendant had refused to wear a condom during their sexual encounters. Defendant objected to that testimony on the ground that it was irrelevant under OEC 401 and, alternatively, that its prejudicial effect substantially outweighed its probative value under OEC 403. The trial court overruled defendant's objections, explaining as follows:

> "Frankly, that—she has a right to explain the circumstances surrounding the matter, and I don't believe a weighing was necessary regarding the prejudice vis-à-vis the probative value. It explains * * * her memory. It makes it more clear to the jury what she remembers what occurred there.

"All very, I think, to the State's view, important stuff. I don't think that—the issue is whether she had intercourse or not, but the—whether the condom was used or not really doesn't add a whole lot to that. It just adds to the circumstances surrounding, so I'm going to—that's the reason I overruled your objections."

The jury convicted defendant of two of the five counts charging him with third-degree sexual abuse, specifically, of the counts involving the acts that G testified she overheard on the evenings of August 20 and 21, and it found him not guilty of the three remaining third-degree sexual abuse charges.[3] The jury also convicted defendant on the two remaining counts, furnishing alcohol to a minor and contributing to the sexual delinquency of a minor.

On appeal, defendant does not renew his basic relevance objections to the challenged evidence under OEC 401. Instead, he argues only that the evidence was inadmissible under OEC 403. As noted, defendant did not assert before the trial court that the victim's testimony that she was a virgin before she first had sex with defendant should be excluded under OEC 403. It follows that defendant's first assignment of error was not preserved. *See State v. Carrillo*, 108 Or App 442, 445-46, 816 P2d 654, *rev den*, 312 Or 527 (1991) (a relevancy objection under OEC 401 does not preserve a claim of error under OEC 403). Accordingly, we reject it without further discussion.

Defendant did, however, preserve his second assignment of error by objecting to the victim's testimony that he refused to wear a condom on the ground that it was inadmissible under OEC 403. Defendant observes that the trial court did not evaluate the extent to which any probative value that the evidence had outweighed the danger of unfair prejudice. He argues that, under *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), which sets out a four-step analysis for determining whether evidence should be excluded under OEC 403,

---

[3] The verdict forms that the jury returned distinguished among the various counts of third-degree sexual abuse based on the dates and times of day when the acts allegedly occurred. Counts 1 and 3, the counts on which guilty verdicts were returned, involved acts occurring on the "[e]vening of August 20, 2004" and the "[e]vening of August 21, 2004," respectively.

that alone is a ground for reversal and remand for a new trial. The state concedes that the court did not engage in the analysis that *Mayfield* requires. It argues that, nevertheless, reversal and remand are not required because the admission of the evidence was harmless.

In *Mayfield*, the Supreme Court held:

> "In making this decision under OEC 403, the judge should engage in four steps. First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

302 Or at 645. The court held that "[t]he judge errs" if he or she fails to exercise discretion or fails to make a record that reflects the described four-step analysis. *Id.* In this case, the record does not show that the trial judge engaged in the four-step analysis that *Mayfield* requires. We therefore accept the state's concession that the trial court erred and turn to the question whether that error was harmless. *See State v. Pierce*, 189 Or App 387, 391-92, 76 P3d 172 (2003) (accepting a concession of legal error where the record did not show that the trial court had engaged in the required analysis).

■■    We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As the court explained in *Davis*, the correct focus of that inquiry "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id.* As an initial step, the court determines the particular evidentiary issue that is subject to harmless error analysis. *State v. Cook*,

340 Or 530, 544-45, 135 P3d 260 (2006). After identifying the pertinent issue, the court considers the nature of the erroneously admitted evidence in the context of other evidence on the same issue. *See State v. Gibson*, 338 Or 560, 576-77, 113 P3d 423 (2005) (pursuing that inquiry). That consideration involves the assessment of any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue. *Davis*, 336 Or at 33-34 (focusing on whether the finder of fact would have regarded the evidence as duplicative, cumulative, or unhelpful in its deliberations).

In addition, in determining the possible influence of the error on the verdict, we consider the importance of the erroneously admitted evidence to a party's theory of the case. *Id.* at 34 ("[E]xcluded evidence goes directly to the heart of defendant's factual theory of the case."); *State v. Perkins*, 221 Or App 136, 145, 188 P3d 482 (2008) (declining to find harmlessness where erroneously admitted evidence went "directly to the heart of [the state's] factual theory of the case"). "If erroneously admitted evidence relates to a 'central factual issue' to the case, it is more likely to have affected the determination than if it dealt with a tangential issue." *State v. Roller*, 201 Or App 166, 173, 118 P3d 804 (2005).

The state reasons thus: A primary issue in the case was whether defendant had sexual relations with the victim before she turned 18. The state's theory at trial was that the victim's encounters with defendant occurred during the weekend of August 20 through 22, before her eighteenth birthday. The state proffered the challenged evidence to bolster the victim's credibility by showing that she accurately recalled the details and circumstances of her encounters with defendant that weekend. Nevertheless, the state posits that the jury apparently doubted the victim's testimony, because it convicted defendant only of the counts involving acts that G's testimony corroborated, and it found defendant not guilty of the charges involving acts to which only the victim testified. It follows, the state reasons, that the evidence did not help the state's case and that the error in admitting it without complying with OEC 403 was harmless.

The difficulty with the state's argument lies in the very nature of the assessment that OEC 403 requires. The evidence that defendant refused to wear a condom had little to do with either party's theory of the case. The evidence was, at best, marginally relevant to the state's proffered purpose of showing that the sexual encounters occurred before the victim's eighteenth birthday. That is so because, although the victim may have accurately recalled that defendant refused to wear a condom during their sexual encounters, that recollection appears to have no bearing on when those encounters occurred. Ordinarily, the fact that erroneously admitted evidence does not strongly relate to a central factual issue in the case might support the conclusion that the error was harmless. *Roller*, 201 Or App at 173.

However, evidence challenged as unfairly prejudicial under OEC 403 requires a somewhat different analysis. Notwithstanding that the evidence at issue here had minimal relevance to either party's theory of the case, that evidence nevertheless could have persuaded the jury that defendant was an irresponsible adult male who deserved to be punished for his conduct with a much younger female. That impression could have been reinforced on each of the four occasions that the prosecutor asked the victim whether defendant had refused to wear a condom during their sexual encounters and she answered affirmatively.

The possibility that the jury may have had some doubt about the victim's credibility does not mean that the evidence had no tendency to influence its decision to convict defendant of two of the five charged offenses. The jury could have been unsympathetic to the victim and still have believed that defendant was a menace to society who should be incarcerated because of his penchant for having unprotected sex with young females. Because a potential effect of the challenged evidence involved precisely the type of risk that compliance with the requirements of OEC 403 was designed to ameliorate, we cannot say there is little likelihood that the erroneous admission of the evidence affected the jury's verdict.

Reversed and remanded.