Submitted August 19, 2015, reversed and remanded November 2, 2016, petition for review allowed May 11, 2017 (361 Or 486)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**ADAM FRANCIS ANDERSON,**
*Defendant-Appellant.*

Lincoln County Circuit Court
123592; A155404

386 P3d 154

Peter Gartlan, Chief Defender, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## FLYNN, J.

Defendant appeals from a judgment of conviction for identity theft and second-degree theft. On appeal, he challenges the trial court's decision to admit into evidence a video showing him being booked at the police station, over defendant's objection that the video was unduly prejudicial. Defendant argues that the court erred by failing to make a record demonstrating that it balanced the probative value of the evidence against the danger of unfair prejudice, as required by *State v. Mayfield,* 302 Or 631, 733 P2d 438 (1987). We are persuaded that the record does not reflect that the court exercised the discretion that it is afforded under OEC 403 to determine whether the probative value of the evidence is substantially outweighed by other considerations, including the danger of unfair prejudice. We reverse and remand on that basis.[1]

## I. BACKGROUND

Defendant was convicted based on evidence that he stole an ATM card from a woman in whose home he was staying and that he then used the card to withdraw funds from the woman's bank account. The evidence against defendant at trial included a photograph of a person using the stolen ATM card to withdraw funds from the owner's bank account and a video of defendant being booked into jail while wearing clothing similar to the clothing worn by the person in the ATM photograph. Defendant argued as his theory of defense that another housemate stole and used the ATM card and that the ATM photograph was not sufficiently distinctive to identify the pictured person as defendant. The booking video, taken approximately 20 days after the date of the ATM theft, showed defendant at a police station following an arrest.

Defendant objected that the video should be excluded because its probative value was outweighed by the unfair

---

[1] Defendant also argues that "[a]ssuming, *arguendo,* that the trial court engaged in OEC 403 balancing," then we should conclude that the court abused its discretion in admitting the evidence. To the extent defendant is arguing that he is entitled to exclusion of the evidence as a matter of law, we reject that argument without discussion.

prejudice that would flow from showing defendant in custody. Defense counsel added that showing this arrest video "becomes more problematic, because I think that" the video depicted defendant being brought into jail on a probation violation, rather than the charged crime. The state argued that the video was not prejudicial because it only showed the standard booking process that follows any arrest.

The court initially indicated that it wanted to view the video to "help [it] decide the balancing issue." However, while the court watched the arrest video with counsel, the prosecutor emphasized that the video bore a date stamp of November 2, 2012, which the court understood to be a date several days earlier than the date of defendant's arrest for the charged crimes. Immediately after that comment, the court advised the parties that it was admitting the video because "it's relevant," but that it planned to give the jury a cautionary instruction.[2]

## II.  ANALYSIS

A.  *The Trial Court's Obligation to Conduct OEC 403 Balancing*

In response to defendant's objection that the video should be excluded as more prejudicial than probative, the trial court was required to conduct the balancing prescribed by OEC 403. *See Mayfield*, 302 Or at 645. That provision of the evidence code permits trial courts to exclude evidence that is relevant "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 403. Although we will review the trial court's ultimate balancing determination for abuse of discretion, we do so only when the record reflects that the court consciously exercised that discretion. *See State v. Pinnell*, 311 Or 98, 112-13, 806 P2d 110 (1991) (court must engage in the "'conscious process

---

[2] The trial court did not identify what caution it planned to give and ultimately gave no cautionary instruction, but defendant did not object to that omission at trial and does not assign error on appeal to the court's failure to give a cautionary instruction.

of balancing the costs of the evidence against its benefits'" as "'a prerequisite to the exercise of discretion'" (quoting Charles Alan Wright & Kenneth W. Graham, Jr., 22 *Federal Practice and Procedure: Evidence* § 5232, 263–64 (1978))); *Mayfield*, 302 Or at 647 ("[T]rial judges are granted broad discretion when findings are made on the record to back up this discretionary call."). In ruling on a challenge to evidence based on OEC 403, "[t]he judge errs if the judge fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion." *Mayfield*, 302 Or at 645 (citing *State v. Johns*, 301 Or 535, 725 P2d 312 (1986)).

In *Mayfield*, the court prescribed an "'approved method of analysis that should guide trial courts in their decision-making under OEC 403.'" *State v. Mazziotti*, 276 Or App 773, 778, 369 P3d 1200 (2016) (quoting *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010)). That prescribed method includes four basic steps: (1) "analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence"; (2) "determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime"; (3) balance those two factors; and (4) make a ruling to admit some, all, or none of the proponent's evidence. *Mayfield*, 302 Or at 645. A trial court need not "expressly follow the *Mayfield* analysis," but, rather, "meets the requirements of *Mayfield* if 'the record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*.'" *State v. Corbin*, 275 Or App 609, 616, 365 P3d 647 (2015) (quoting *Borck,* 230 Or App at 637 (citation and internal quotation marks omitted)). Appellate courts "examine whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law[.]" *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005).

B. *The Ruling in this Case*

Based on our review of the record in this case, we are persuaded that the record does not show that the court

engaged in "the balancing test that OEC 403 prescribes."[3] *See Shaw*, 338 Or at 615. Rather, the court told the parties that it would admit the video because "it's relevant." Determining whether challenged evidence is "relevant" is a threshold inquiry, but it does not resolve any of the considerations that make up the balancing test that OEC 403 prescribes. The significance of a determination that evidence is "relevant" is addressed by OEC 402, which specifies that "[e]vidence which is not relevant is not admissible" but that "relevant" evidence is generally admissible. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. However, "[e]vidence law demands not only logical relevance but also that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice as set forth in OEC 403." *Mayfield*, 302 Or at 644. Thus, describing evidence as "relevant" does not suggest OEC 403 balancing, because the purpose of OEC 403 is to determine when relevant evidence should be excluded.

Defendant's objection was to the unfair prejudice from a video that showed defendant in custody. Regardless of whether the trial court initially planned to "decide the balancing issue," the court did not address any of the considerations that defendant's objection required the court to consider. Defendant argued that, "[j]ust as in trial" it is prejudicial for the jury to know that the defendant is in custody, and it would be unduly prejudicial for the jury to see defendant "with the walk of shame, handcuffs on, being taken to the jail." *See, e.g., State v. Washington*, 355 Or 612, 627, 330 P3d 596, *cert den*, ___ US ___, 135 S Ct 685 (2014) (explaining

---

[3] The state argues that defendant failed to preserve his challenge to the trial court's failure to make a record reflecting the exercise of discretion because he did not specifically request that the court make a record. However, given *Mayfield*'s clear directive that the "judge errs if the judge * * * fails to make a record which reflects an exercise of discretion," 302 Or at 645, defendant's request for balancing advised the trial court of the need to both engage in balancing and make a record of that balancing and, thus, preserved the error. *See State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) ("primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record") (citing *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008)).

that Oregon has long recognized that criminal defendants have a right "'to appear free of physical restraints during a jury trial,'" in part to protect the defendant's right to an impartial jury, because "the use of physical restraints can impinge on the presumption of innocence to which a defendant is entitled" (quoting *State v. Bowen*, 340 Or 487, 489, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007))). The prosecutor responded that the video showed defendant wearing "very similar clothing" to the person in the ATM photo and would be highly probative. With respect to prejudice, the prosecutor acknowledged that letting the jury know that a defendant is in custody at the time of trial can be prejudicial but argued that the video would not be as prejudicial because "everybody has to get booked on charges."

Yet the court's ruling reflects no assessment of the "quantum of probative value" to showing defendant's clothing at the time of the arrest. Nor does it reflect a determination of the extent to which the jury would observe that the video depicted defendant in custody or the extent to which that observation might improperly bias the jury. And it reflects no balancing of those competing factors. In other words, there is no record that the court "analyze[d] the quantum of probative value of the evidence" or determined the extent to which the video might "distract the jury from the central question whether the defendant committed the charged crime" and no indication that it balanced those countervailing considerations against each other. *See Mayfield*, 302 Or at 646. That is error.[4]

We recognize that we have described *Mayfield*'s balancing test as "a matter of substance, not form or litany" and have held that we look to whether the "totality of the attendant circumstances" shows that the trial court

---

[4] Although we need not decide *why* the trial court addressed only "relevance" when explaining its ruling, it is possible that the court understood the prosecutor's emphasis that the video showed a different arrest date as a suggestion that the video should be admitted under OEC 404(4), without OEC 403 balancing, because the video was connected with an offense other than one of the charged offenses. At the time of trial, our case law—since overruled—had construed OEC 404(4) as precluding OEC 403 balancing in a criminal trial, if "evidence of other crimes, wrongs or acts by the defendant" is "relevant." *See State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007), *rev den*, 345 Or 159 (2008), *abrogated by State v. Brumbach*, 273 Or App 552, 359 P3d 490 (2015).

engaged in the balancing that *Mayfield* requires. *See, e.g.,*
*State v. Conrad,* 280 Or App 325, 330-31, 381 P3d 880
(2016). Indeed, in *Conrad,* we held that the court's ruling
satisfied *Mayfield* "given the totality of the attendant cir-
cumstances," even though the court denied the motion by
simply stating, "So that motion is * * * denied." *Id.* at 331.
But *Conrad* emphasizes that we considered it to be "the rare
case," in which we could conclude that the trial court sat-
isfied *Mayfield* despite a "very thin record." *Id.* at 332. We
specifically cautioned that "the point of *Mayfield*" is that "we
can conduct meaningful review only when we can tell that
the court exercised its discretion and how it did so" and that
"[i]n many cases," when a trial court fails "to articulate on
the record, in the manner set forth in *Mayfield,* how it is
exercising its discretion," that failure "will preclude mean-
ingful appellate review[.]" *Id.* at 331-32.

The record in this case differs from the record in
*Conrad* in at least two important respects, both of which
make this one of the "many cases," in which the court's
failure to articulate its balancing of the *Mayfield* factors
"preclude[s] meaningful appellate review[.]" 280 Or App at
332. First, among the circumstances that made *Conrad* a
"rare case," we emphasized that the defendant's arguments
regarding the challenged evidence were of "limited scope."
The defendant argued that videos showing interviews with
his alleged victims were prejudicial only because the jury
might place undue emphasis on video evidence during its
deliberations. *Id.* He argued that this prejudice outweighed
a probative value that he contended was "low" because the
videos were not conducted under oath and because the
victim's answers were elicited by interviewers. *Id.* at 331.
In other words, the full extent of the potential "danger of
unfair prejudice" in *Conrad* could be resolved by the court
answering "yes" or "no" to the defendant's premise that the
jury would place undue emphasis on videos during deliber-
ations. And the full extent of his challenge to the probative
value of the videos would, similarly, be resolved by the court
answering "yes" or "no" to the defendant's generic premise
that interview answers are of low probative value when the
interview is not conducted under oath. That "limited" focus
permitted us to infer from the record as a whole that the

court consciously engaged in the *Mayfield* analysis before rejecting the defendant's objection. *Id.* at 332.

Here, by contrast, the trial court could balance the "quantum of probative value" of the video against the risk that the video would "distract the jury from the central question" only after evaluating where each consideration fell on a spectrum. To "analyze the quantum of probative value" of the video, the court first had to assess the extent to which the clothing that defendant wore in the video resembled the clothing worn in the ATM photo and the extent to which unique characteristics of the clothing made any resemblance significant. Similarly, in order to determine how prejudicial the evidence was, the court first had to assess the extent to which the jury would observe that the video depicted defendant in restraints or appreciate that the video meant defendant had been arrested more than once. Only after making those determinations could the court balance the weight of the evidence against the risk of unfair prejudice. None of those determinations appear on the record, and, without them, we cannot determine that the court exercised its discretion in the manner set forth in *Mayfield*.

The second significant distinction between the record in this case and the record in *Conrad* is the language of the court's ruling. The trial court's ruling in *Conrad* was a generic denial of the OEC 403 objection. That lack of specificity permitted us to infer from the other "rare" circumstances, that the court denied the objection after engaging in the balancing that *Mayfield* requires. Here, however, the trial court explained why it was "going to overrule the objection" to the video. And that explanation—because "it's relevant"—precludes us from inferring that the court denied the objection based on an evaluation and balancing of the extent of probative value of the evidence and the risk of unfair prejudice. We decline the dissent's invitation to treat the court's statement that the video "is relevant" as short-hand for an articulation of the balancing that *Mayfield* requires. As explained above, "relevance" and "probative value" are distinct legal concepts, and nothing about the statement "it's relevant" implies an assessment of the quantum of probative value of the evidence, let alone an assessment of the extent of

potential prejudice and a balancing of the competing consid-erations. On the contrary, it implies that the court's analysis never reached beyond the threshold question of "relevance."

Moreover, the court's reference to giving a "caution-ary instruction" regarding the evidence does not change our conclusion that the record does not reflect the balancing that *Mayfield* requires. *See State v. Altabef,* 279 Or App 268, 270 & n 3, 379 P3d 755 (2016). In *Altabef,* as here, the trial court admitted evidence over the defendant's OEC 403 objection because the evidence was "relevant," but agreed to give a cautionary instruction. We concluded that, "[a]lthough the parties debated the probative value of the evidence, the record offers no indication that the trial court balanced the probative value of the evidence against its prejudicial effect." *Id.* at 270 n 3. As in *Altabef,* the offer of a curative instruction—although it may reflect the court's recognition that the evidence is potentially prejudicial—does not change the fact that "the record offers no indication that the trial court balanced the probative value of the evidence against its prejudicial effect." *Id.* The trial court's "fail[ure] to make a record which reflects an exercise of discretion" is error. *See Mayfield,* 302 Or at 645.[5]

## C. *Harmless Error Analysis*

Article VII (Amended), section 3, of the Oregon Constitution requires us to affirm despite the error if we con-clude that "there was little likelihood that the error affected the verdict." *State v. Davis,* 336 Or 19, 33, 77 P3d 1111 (2003). Under that standard, we conclude that the error in this case was not harmless and requires reversal. Defendant argues

---

[5] The record of the ruling in this case is readily distinguishable from the record in *State v. Brown,* 272 Or App 424, 355 P3d 216, *rev den,* 358 Or 145 (2015)—on which the dissent relies. *See* 282 Or App at 37, 38-39 (DeVore, J., dissenting). The trial court in *Brown,* in addressing an OEC 403 objection to evidence of prior convictions, expressly concluded that the "probative value [of the evidence is] substantial" and explained why. *Id.* at 427. It also expressly artic-ulated: "The second part of it is the weighing issue, and I want to be clear that I have done the weighing, and that the probative value is not substantially out-weighed by unfair prejudice." *Id.* Moreover, as we emphasized, the court in *Brown* ruled to exclude one of the offered prior convictions, thereby demonstrating that it was not admitting the challenged evidence "wholesale and indiscriminately." *Id.* at 434. Thus, unlike the statement "it's relevant," here, the record of the ruling in *Brown* demonstrated that the court understood and applied the *Mayfield* balanc-ing test.

that by showing him in custody, the video "may have led the jury to believe that defendant posed a danger to officers or staff." *See, e.g., Washington,* 355 Or at 628 (explaining why allowing the defendant to appear in restraints may have been prejudicial). In addition, he argues that the video presented the risk that the jury would "believe that he was a recidivist who was therefore likely guilty of the charged offenses." *See, e.g., State v. Johns,* 301 Or 535, 549, 725 P2d 312 (1986) ("[E]ven if evidence that a defendant has committed other crimes has some legitimate probative value, the danger of unfair prejudice to the defendant may outweigh any such probative value."). Finally, defendant argues that those substantial risks of prejudice outweighed a probative value that was "minimal" because the articles of clothing defendant wore "are so common that they have little value as indications of identity."

Had the trial court engaged in the required exercise of evaluating and balancing those countervailing considerations, it may have been persuaded by defendant's arguments for excluding the video. And exclusion of that evidence would have had a tendency to affect the verdict. Thus, we cannot conclude that the court's error had little likelihood of affecting the verdict. *See State v. Pierce,* 189 Or App 387, 392, 76 P3d 172 (2003) (after explaining that trial court erred in failing to engage in the analysis that *Mayfield* requires, concluding that error was not harmless because the admitted evidence may have affected the jury's verdict).

Reversed and remanded.

**DEVORE, J.,** dissenting.

I write this note of apology to the majority, because I cannot agree, and to the trial court, because I believe it did not err. In my opinion, the record suffices to show that the trial court *did* exercise its discretion to determine that the probative value of the video outweighed its prejudice. And, I believe that the majority opinion cannot be reconciled with our recent decisions about what record we demand of our trial courts.

The majority declares that "the record does not reflect that the [trial] court exercised the discretion that it

is afforded under OEC 403" and that "the record does not show that the [trial] court engaged in the balancing test that OEC 403 prescribes." 282 Or App at 25, 27-28 (internal quotation marks omitted).[1] The majority states, "[T]he [trial] court did not address any of the considerations that defendant's objection required the court to consider." 282 Or App at 28. The majority observes that

> "the court's ruling reflects no assessment of the quantum of probative value to showing defendant's clothing at the time of the arrest. Nor does it reflect a determination of the extent to which the jury would observe that the video depicted defendant in custody or the extent to which that observation might improperly bias the jury."

282 Or App at 29 (internal quotation marks omitted). Although I agree that the record is thin, the record shows that the trial court did its job correctly.

To paraphrase, the trial court's task, when presented with an objection under OEC 403, is to (1) assess the probative value of the challenged evidence, (2) assess the prejudicial effect of that evidence, (3) balance the probative value against the prejudicial effect, and (4) decide whether to admit all, some, or none of that evidence. *See State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (describing the process as four steps). As to the last point, the court may mitigate the prejudicial effect of the offered evidence by giving the jury a limiting instruction describing the limited or proper purpose of that evidence. *Id.* at 647; *see also State v. Brown*, 272 Or App 424, 432, 355 P3d 216, *rev den*, 358 Or 145 (2015) (trial court may consider a limiting instruction to minimize prejudice).

This trial court did all that was asked of it, and the court did so in the expeditious way that a trial court must. The state offered the video for the simple purpose of showing that defendant was "wearing the same" or "very similar clothing" in the video as the clothing someone wore when photographed using an ATM. The video, however, was not recorded on the date of the offense, nor in conjunction with

---

[1] OEC 403 provides, in part, that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

defendant's arrest for the offense. The state noted the different date of the video. Although the video was recorded on a different date, the state explained that, because defendant had left a duffle bag with other clothing at the house of someone else, defendant was missing clothing. The state urged, "So the fact that several days later he's in this, * * * real similar outfit is very relevant to the state's case to prove identity."

Defendant's counsel said, "I'll concede there is some relevance" to the video. But counsel objected that the video was "prejudicial" because it showed defendant in custody. He argued that the prejudice was the same as wearing an orange jumpsuit in court.[2] That was defendant's sole and simple objection. Defendant did not argue that the video would disclose that he had committed another bad act or that it was inadmissible evidence of propensity or character. See OEC 404(3) (proscribing propensity evidence; providing exceptions).

After hearing arguments, the court stated that it would "like to see what you want to offer." To assess probative value and prejudice, the court watched the video twice. The court directed that the video "stop when he's coming through the doorway there, just so I could take a look at the clothing." The court observed that as defendant passed in front of a cabinet, the court could "see pants and shoes and top." The state narrated, "So you see the dark hoodie, the same fading type of jeans, and the same shoes." Reaching its conclusion, the court recognized the video was from "a different day" and would not have been from the time of the offense, but about "[f]ive days closer to the event in question" than originally discussed. The video was "about twenty days after" the offense. The court ruled, "[I]t's relevant. I'll give a cautionary instruction. So I'm going to overrule the objection."[3]

The record reflects that the court first assessed the probative value of the video by viewing it outside the

---

[2] See, e.g., State v. Reingold, 49 Or App 781, 620 P2d 964 (1980), rev den, 290 Or 727 (1981) (considering the prejudice of a witness appearing in a prison jumpsuit, slippers, and handcuffs).

[3] As it happened, the court did not give a limiting instruction. However, defendant has not assigned error to that failure on appeal.

presence of the jury. The court considered that the video was not taken in conjunction with an arrest at the time of the offense but was taken days later. It heard the state urge probative value with reference to defendant's reduced wardrobe that strengthened the probability that he wore the same clothes seen in a video taken on a different date than the offense. The court resolved that the date was 20 days after the offense, five days closer than originally assumed. The probative value in the video was self-evident in clothing recited by the court and narrated by the state.

The court implicitly assessed the prejudicial effect of the video. That assessment is implicit because the court engaged in colloquy, drawing out defendant's originally simple objection—that he should not be shown in custody—until defendant could articulate that the issue was the probative value "versus the, the prejudicial value here." The court entertained defendant's arguments. The court evaluated those arguments when twice watching a limited video showing defendant walking through a hallway but showing nothing more. The court necessarily recognized a prejudicial effect insofar as the court indicated that it would give a limiting instruction.

The court balanced the probative value against the prejudicial effect of the evidence. That balancing must have happened because the court declared that it would balance. The court explained that it wanted to watch the video because, "[f]rankly, it'll help me decide the balancing issue." Nothing in the record supports a *reasonable* interpretation that the court silently and abruptly changed its method of analysis by deciding *not* to balance probative value and prejudicial effect. The record does not indicate that the court decided that it need not balance.

The court reached its conclusion in the terms in which the parties had argued the objection. The state had urged that the evidence was "relevant." Defendant had argued that the evidence was "prejudicial." The court declared, "it's relevant," in the sense that the evidence was substantially more relevant than prejudicial. The majority makes too much of those two words, "it's relevant," treating them in isolation, while dismissing the entire context

of seven pages of trial transcript in which the court entertained arguments about the probative value and prejudicial effect of the evidence. Moreover, those words did not represent the ruling so much as an explanation that relevance outweighed prejudice. That is so because the court's ruling, in fact, was spoken in the next words, "So I'm going to overrule the objection." That ruling necessarily means that the court responded in required terms under OEC 403. *See State v. Conrad*, 280 Or App 325, 330, 381 P3d 880 (2016) (treating such a statement that way).

In prior decisions, we have recognized that the four-step analysis described in *Mayfield* "is a matter of substance, not form or litany." *Brown*, 272 Or App at 433; *see also Conrad*, 280 Or App at 330. We look instead at the "'totality of attendant circumstances'" to determine whether the court balanced the competing considerations. *Conrad*, 280 Or App at 331 (quoting *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010)). In *Brown*, the trial court made no lengthy review of each of the four steps in *Mayfield*. Instead, it summarily declared that the probative value of prior convictions substantially outweighed the prejudicial effect. We concluded that "although the [trial] court's statements are not extensive, the totality of the attendant circumstances indicate that the court did engage in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." 272 Or App at 433-34 (internal quotation marks omitted).

Even less sufficed in *Conrad*. In that case, the defendant denied that any sex abuse had occurred and objected to the admission of videotapes of the investigatory interviews with the child victims. 280 Or App at 327-28. The defendant challenged the evidence in a motion *in limine*. *Id*. at 327. The court heard the arguments, then determined the motion by simply stating, "'So that motion is * * * denied.'" *Id*. at 331. The court did far less than here to demonstrate that it had considered the probative value (*e.g.*, testing the temporal connection between clothing at the ATM and clothing in the video), assessed the prejudicial effect (*e.g.*, twice watching the video of a limited scene in a hallway; intending to give a

limiting instruction), and expressed that it would engage in balancing (*e.g.,* "that'll help me with the balancing").

In *Conrad* we were "satisfied that the [trial] court implicitly balanced" for several reasons. *Id.* at 332. First, because the court was "specifically tasked" with resolving a balancing issue under OEC 403, it was "fair to conclude that the court understood the narrow question before it." *Id.* Second, because the court had received defendant's written motion, it was "fair to conclude that the court implicitly balanced." *Id.* Third, that case was not one in which the state argued, or the court could have concluded that balancing was not required. *Id.* (citing *State v. Mazziotti,* 276 Or App 773, 779, 369 P3d 1200, *rev allowed,* 359 Or 847 (2016) (where, under OEC 404(4), state argued balancing was unnecessary)).

Those same considerations should guide our conclusion in this case. The trial court was specifically tasked with resolving the balancing issue under OEC 403. In an interactive colloquy, the court entertained the arguments about probative value and prejudicial effect. It reviewed the evidence outside the jury's presence. The court declared aloud that it would balance those considerations. And, like the simple ruling in *Conrad* ("So that motion is * * * denied"), this trial court concluded, "So I'm going to overrule the objection." Because defendant did not raise an objection about other bad acts under OEC 404(3), that ruling necessarily meant that the court had balanced, as it said it would. *See Conrad,* 280 Or App at 331.

Indeed, the trial court's three-sentence ruling here expressed more than the single sentence in *Conrad.* If nothing else, the statement "it's relevant" determines, despite the date difference, that the videotape has probative value. The statement, "I'll give * * * a cautionary instruction," responds to defendant's argument that to be seen in custody has a prejudicial effect, which will be mitigated with an appropriate jury instruction. And, the statement, "So I'm going to overrule the objection," expresses that the court necessarily determined that relevance substantially outweighed prejudice. Thus, contrary to the majority, the record here *does*

reflect that the trial court exercised the discretion that is afforded under OEC 403. *But see* 282 Or App at 33-34.

The majority fairly describes *Conrad* as an example of the outer limit of what is permissible under *Mayfield*, but the record in this case confirms that the trial court was *within* that outer limit. This case is closer to the trial court's statements in *Brown* than this case is to *Conrad* because the transcript shows that the trial court probed relevance, responded to the risk of prejudice with intent to give a limiting instruction, and expressed aloud the court's awareness of the need to balance the competing considerations. As a consequence, the majority's decision inadvertently casts doubt on *Brown* and is irreconcilable with *Conrad*.[4]

In order to reach its decision, the majority interposes a number of comparisons. Those comparisons are questionable with other cases. I take them in reverse order of complexity.

First, the majority seeks to distinguish *Conrad* because this trial court declared the video "relevant," while the trial court in *Conrad* simply "denied" the motion. The majority assumes that, in this case, the trial court *only* found the video relevant and did nothing else. That assumption is dispelled by consideration of the totality of the attendant circumstances, a review of the seven pages of transcript, and recognition of all three sentences comprising the trial court's ruling. *See Borck*, 230 Or App at 638 (considering the totality of attendant circumstances).

Second, the majority seeks to distinguish *Conrad* based on the nature of the objections there and here. The majority minimizes the objection to the video in *Conrad*, where the defendant complained about the lack of sworn testimony, the answers elicited by an investigator, and the ability of a jury to watch the video repeatedly. I do not

---

[4] The majority is correct in noting that the trial court said more in *Brown* than did the court here. 282 Or App at 32 n 5. But that does not serve to "readily" distinguish *Brown* because the colloquy and ruling here touch the same points of relevance and prejudice as does *Brown*. More importantly, it is *Conrad*, with its one sentence ruling and *no colloquy* about relevance or prejudice that must be distinguished. That is so because the colloquy and ruling here remain *within* the outer, permissible limit of *Conrad*.

understand how a purportedly less serious objection serves to distinguish *Conrad* or to tell anything about how we review whether a trial court properly applied OEC 403.[5] Nevertheless, based on a purportedly lesser objection in *Conrad*, the majority overlays a conceptual construct for that case in which probative value and prejudicial effect can be answered simply "yes" and "no." In contrast, the majority contends that, in this case, those questions of relevance and prejudice "fall on a spectrum," creating greater complexity. I confess I know of no authority for an intellectual overlay of that sort, let alone one that presupposes that, in one case, the question is "yes" or "no" as to relevance or prejudice, while, in another case, the question of relevance or prejudice involves a "spectrum" of complexity. Such distinctions, to me, are artificial and unpersuasive.

Third, the majority rejects any significance in the trial court's statement that it would give a limiting instruction. Rather than seeing that as recognition of defendant's argument about prejudicial effect, the majority declares that it means nothing. The majority compares *State v. Altabef*, 279 Or App 268, 379 P3d 755 (2016), but that case presented a different problem. That defendant objected to evidence of prior bad acts, not ordinary prejudice like being seen in custody. The significance was the possibility that the trial court, at that time, might well have believed that no balancing was required because of the state of the caselaw. *Id.* at 270 n 5. At that time, a rule on "other bad acts," OEC 404(4), had been interpreted to preclude balancing under OEC 403. *State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007), *rev den*, 345 Or 159 (2008) ("[I]n criminal cases, [OEC 404(4)] precludes OEC 403 balancing of probative value against, among other things, danger of undue prejudice" except as otherwise required by the state or federal constitutions.). The trial court in *Altabef* ruled that it would give a rather inartful limiting-instruction, saying that the jury can consider prior, uncharged acts of sex abuse only to "help explain how we got to where we are." 279 Or App at

---

[5] For that matter, I do not see how the seriousness of the admission of a videotape of interviews of victims of child abuse is less serious than the prospect of a videotape of defendant, handcuffed or not, walking in a hallway wearing a dark hoodie.

270. Treating that as a limiting instruction, we held that we could not determine that the court engaged in balancing under OEC 403. The reason, however, is because, in other-bad-acts cases, the law formerly permitted the court to avoid balancing due to OEC 404(4).

That prospect does not exist in this case because there was no obvious evidence of other bad acts, and there would have been no reason for the jury to assume that the videotape came from any incident other than an arrest on the charge at issue.[6] Most importantly, defendant did not raise an objection under OEC 404(3), and the state did not respond that OEC 404(4) obviated the need to balance under OEC 403. *Mazziotti*, 276 Or App at 779 (reversing where state argued balancing was not necessary due to OEC 404(4), and there was no record indicating that the court balanced). In short, any comparison with *Altabef* is mistaken.

Finally, the majority comments in a footnote that the majority "need not decide *why* the trial court addressed only 'relevance' when explaining its ruling." 282 Or App at 29 n 4 (emphasis in original). Then, as if to suggest why the court may have done so, the majority recognizes that, at the time, OEC 404(4) permitted a court to avoid balancing in cases involving other bad acts or offenses. That suggestion is unwarranted on this record, for the same reason just mentioned. The parties and the trial court did not treat this as an other-bad-acts case. Rather, the parties and the court treated this as a case under OEC 403.

I agree with the majority, not in reading this record or applying our precedents, but in the larger lesson. When the trial court expresses on the record its application of OEC 403, as described in *Mayfield,* the court assures the parties of due consideration of the competing considerations, demonstrates that discretion *is* being exercised, and facilitates appellate review. *See Conrad*, 280 Or App at 331 (stressing *Mayfield*). When records are thin, as here, the risk that *we*

---

[6] *See State v. Towers,* 224 Or App 352, 357-58, 197 P3d 616 (2008) (affirming a trial court's decision to admit, over an OEC 403 objection, a jail booking photograph because, "although a jail photograph ordinarily would tempt a jury to convict the defendant for being a criminal recidivist," the jury would have had no reason to believe that the particular photo depicted a different arrest).

err grows. In this instance, I fear that it is we who err, not the trial court. To be sure, no one is infallible. Therefore, with an apology to my colleagues if I err in reading this record or our precedents, and with an apology to the trial court if we have erred in returning this case, I respectfully dissent.[7]

---

[7] "[W]hen this court reverses and remands, we assume that the trial court, with the parties' guidance, will follow whatever procedure is appropriate in light of the reason for the remand." *State v. Sewell*, 225 Or App 296, 297, 201 P3d 918 (2009). We do not preclude, from among other possibilities, that the court could reexamine the evidentiary issue, making a record consistent with *Mayfield*, and, depending upon the conclusion reached, grant a new trial or reinstate the judgment. *See id.* at 298 (explaining such proceedings are not precluded by an appellate decision to reverse and remand).