692 August 28, 2024 No. 623

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LUIS MANUEL PALOMARES,
*Defendant-Appellant.*

Malheur County Circuit Court
20CR50804; A177557

Erin K. Landis, Judge.

Argued and submitted December 11, 2023.

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. On the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

**PAGÁN, J.**

Defendant appeals from a judgment convicting him of attempted assault in the first degree with a firearm (Count 2); assault in the second degree (Count 4); unlawful use of a weapon with a firearm (Count 5), and felon in possession of a firearm (Count 6).[1] He was sentenced to consecutive terms of incarceration for 60 months on Count 2 and 70 months on Count 4, with lesser concurrent sentences on the other two counts, for a total of 130 months' incarceration, and three years post-prison supervision. On appeal, defendant raises five assignments of error. The first three relate to the admission of a police detective's testimony regarding three out-of-court identifications of defendant as the assailant. Defendant asserts that the testimony was improperly admitted under an inapplicable hearsay exception. In his other assignments of error, defendant requests plain error review of the court's failure to give a particular jury instruction and challenges the court's decision to impose consecutive sentences on Counts 2 and 4. We agree with defendant that the court erred in admitting the detective's testimony, and reverse and remand. Because we reverse and remand on that basis, it is unnecessary to reach defendant's fourth and fifth assignments of error.

The facts relevant to our disposition are uncontested and largely procedural. The charges against defendant stem from an incident in a motel room where the victim, M, was pistol-whipped in the back of the head and shot in the hand. At trial, the state called M and a witness, Velasquez, who was in the motel room at the time of the assault; both M and Velasquez testified that they either did not remember or did not know who had assaulted M. Following that testimony, the state sought to admit the testimony of Detective Esplin, who had conducted investigatory interviews with both M and Velasquez during which they had each described the encounter and identified defendant as the perpetrator.

The state advanced a number of theories of admissibility for the various out-of-court statements that M and

---

[1] Defendant was acquitted of attempted murder in the second degree (Count 1) and assault in the second degree with a firearm (Count 3). A final count of criminal mischief in the first degree was dismissed.

Velasquez made to Esplin, including prior inconsistent statements to impeach their trial testimony, prior consistent statements to refute an implication of recent fabrication, and identification of a person made after perceiving the person. In an extended discussion out of the presence of the jury, the court ruled on the admissibility of varying pieces of evidence, concluding that the three instances of identification by M and Velasquez were admissible as nonhearsay identifications, under OEC 801(4)(a)(C).[2] The court agreed to give a limiting instruction to the jury that some of Esplin's testimony could be considered to be substantive evidence, and some could only be considered as impeachment evidence, and did so at multiple points during Esplin's testimony.

On appeal, defendant asserts that the trial court erred in admitting the identification testimony under OEC 801(4)(a)(C). Defendant points to our decision in *State v. Hartley*, 289 Or App 25, 407 P3d 902 (2017), which examined OEC 801(4)(a)(C) and clarified its narrow application to out-of-court identifications following the declarant's perception of a person, including holding that it did not apply to circumstances virtually identical to those present in this case. The state does not refute defendant's discussion of OEC 801 (4)(a)(C) and *Hartley*, but maintains that the identification testimony here was not admitted as substantive evidence, but rather as impeachment of M and Velasquez's trial testimony that they could not remember or did not see who assaulted M. We agree with defendant.

We review a trial court's determination that a statement is not hearsay for legal error. *Hartley*, 289 Or App at 29.

Esplin testified regarding three identifying statements made by M and Velasquez, during interviews that occurred after their initial lack of cooperation in identifying the perpetrator. The first was that during an interview with Esplin, M admitted that he knew who had assaulted him, and told Esplin the person's street names were "Chino"

_____

[2] OEC 801(4)(a)(C) states that an out-of-court statement is not hearsay if the declarant testifies at the trial and is subject to cross-examination regarding the statement, and the statement "is one of identification of a person made after perceiving the person."

and "Junior Palomares." Esplin additionally testified that, during an interview, Velasquez referred to the assailant as "Big Homie 18" and "Chino."[3] Later in the interview, Esplin showed Velasquez a photo of defendant and she confirmed that he was the person who had assaulted M.

As noted above, OEC 801(4)(a)(C) establishes that, under the proper circumstances, a statement is not hearsay when it is "one of identification of a person made after perceiving the person." In *Hartley*, we examined the legislative history of that hearsay exception, noting that "the legislature warned that it is narrow in scope," and that "'[t]he subparagraph should not be read literally'" and was "'not aimed at situations where, after an event, the declarant simply makes a statement which identifies the person involved ("X did it").'" *Hartley*, 289 Or App at 30 (quoting Legislative Commentary to OEC 801, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 801.02[2], 713 (6th ed 2013)). We went on to explain that, "to qualify as nonhearsay, the identification *must result from*, and not merely *follow*, the declarant's perception of the person." *Id.* at 31. As with the identification at issue in *Hartley*, which was deemed inadmissible under OEC 801(4)(a)(C), M's and Velasquez's statements that defendant was the assailant did not result from them being shown a person or a photograph. The record indicates that their ability to identify defendant resulted from their acquaintance with and prior knowledge of him, not their perception of him through a process such as a line up or photo array. The trial court erred in admitting the out-of-court statements as nonhearsay under OEC 801(4)(a)(C).

The state asserts that the identifications were not admitted as substantive evidence, but rather as impeachment of M's and Velasquez's trial testimony as inconsistent statements. However, our review of the record indicates that the trial court explicitly concluded that the identifications were admissible as nonhearsay under the identification exception.[4] The court's limiting instructions regarding

---

[3] The parties do not contest that the street names given referred to defendant.

[4] With respect to M's statements, the trial court stated "in terms of the I.D., under Rule 801(4)(a)(C), the I.D. does come in." Regarding Velasquez, the court stated: "I will allow the testimony of *** Esplin regarding what Ms. Velasquez said in terms of the identification of [defendant] pursuant to Rule 801(4)(a)(C)."

impeachment and prior inconsistent statements were specifically directed to other statements made by Velasquez that Esplin testified about. Furthermore, the state emphasized the identifications multiple times during closing argument, asserting that Velsaquez's description of what happened in the room could be the basis for a verdict. The state did not refer to the identifications exclusively in terms of impeachment of the witnesses.

Having concluded that the trial court erred in admitting the identifications pursuant to OEC 801(4)(a)(C), we must determine whether that error was harmless. "We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict." *State v. Sewell*, 222 Or App 423, 428, 193 P3d 1046 (2008), *adh'd to on recons*, 225 Or App 296, 201 P3d 918, *rev den*, 346 Or 258 (2009). When evaluating that likelihood, we consider the erroneously admitted evidence in the context of the other evidence on the same issue. *Id.* at 429. In closing arguments, the state recounted the evidence that was presented, including surveillance video of defendant entering the motel room, then leaving shortly after with his face covered, followed by a wounded and bleeding M. The state argued to the jury:

> "[T]hat's enough to base your verdict on right there when you combine that with the identity, with the fact that Ms. Velasquez did I.D. him from a photograph eventually. She didn't want to do it. And she didn't want to do it here in court, all right. But she made it very clear to—you know, in terms of her description of what happened in the room, of a shooter, and then she identified to Detective Esplin, finally, you know, two months later in November.
>
> "And she didn't do it—again, he had—she had—she took her—a while. And she didn't do it eagerly, as he said. He basically, finally, (indiscernible), but he shows her the picture, you know, and—of Mr. Palomares from the—you know, the surveillance photo, and she says—well, I think, nods her head, 'That's the guy.'
>
> "And he confirms it with her later again, and she confirms three times that, no, at that point, there were no

other people. You know, there weren't anybody else in the room. So that alone is enough to base your verdict."

The state reiterated the importance of Velasquez's identification at two other points in the closing argument, and also emphasized M's identification, noting that their reluctance to identify defendant demonstrated how afraid of him they both were. Because of the state's emphasis on the statements of identification, in addition to the fact that there was no other direct evidence of what happened in the motel room and who assaulted M, we conclude that the admission of the identification evidence was not harmless.

Because we reverse and remand, we do not reach defendant's additional assignments of error regarding jury instructions and sentencing.

Reversed and remanded.