Submitted September 30, 2015, reversed and remanded June 14, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BALTAZAR GARCIA-ROCIO,
*Defendant-Appellant.*

Washington County Circuit Court
C122337CR; A154601

399 P3d 1009

Peter Gartlan, Chief Defender, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**EGAN, J.**

Defendant appeals a judgment of conviction for one count of first-degree rape, ORS 163.375; two counts of first-degree sexual abuse, ORS 163.427; and one count of first-degree sodomy, ORS 163.405. The charges stemmed from defendant's daughter's allegation that defendant raped and sexually abused her during a brief period between 1995 and 1996. Defendant assigns error to the trial court's admission of three portions of a video-recorded interview of defendant by detectives in which defendant was questioned about sexual abuse allegations made by the victim against defendant's brother. Defendant argues that the trial court erred because it admitted the three interview portions without making a record demonstrating that it had engaged in the conscious process of OEC 403[1] balancing, as defendant had requested and as required by *State v. Mayfield*, 302 Or 631, 733 P2d 438 (1987). Under the totality of the circumstances, we conclude that the trial court failed to demonstrate that it admitted the interview portions after consciously engaging in the OEC 403 balancing process required by *Mayfield*. Consequently, the court erred as a matter of law. We also conclude that the error was not harmless. Accordingly, we reverse and remand.

We "examine whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, [and] we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion." *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005).

The victim, defendant's daughter, who was 26 years old at the time of trial, accused defendant of sexually abusing her and raping her three times when she was approximately eight years old. At that time, the victim lived in a two-bedroom apartment with her parents, her five siblings, and her uncle. The victim testified that the abuse took place in the bedroom that the victim shared with her whole family, excluding her uncle, and began after she saw defendant

---

[1] As relevant, OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * *."

touch the vaginal area of her older sister, A. All of the abuse took place at night or early in the morning when the bedroom that the family shared was dark and everyone was sleeping, except for the victim's mother, who was sometimes in the kitchen.

According to the victim, defendant stopped abusing her after she began menstruating. Shortly thereafter, her uncle sexually abused and raped her when she and her sisters had begun sleeping together in a smaller room of the apartment, separate from the rest of the family. Her uncle admitted to police that he had sexually abused the victim and some of her siblings.

The victim also testified that, on two occasions, she heard A tell their mother that defendant had sexually abused A. She said that their mother responded that it was not defendant but their uncle who had done it. A, who is one year older than the victim, testified that it was their uncle who would enter the family's shared bedroom while they slept. She testified that she told her mother at the time that their uncle would come into the room. But it was not until years later that she told her mother that their uncle sexually abused her and that she saw him touch her siblings, including the victim, when he entered the bedroom. A testified that defendant never sexually abused her and that she never saw him sexually abuse any of her siblings. The victim's oldest sister, J, who is 10 years older than the victim, also testified that she saw their uncle come into the family's shared bedroom while the family slept. The victim's mother testified that she did not remember or know anything about her children being sexually abused.

After the police had begun investigating the victim's allegations, they arranged for the victim to make a pretext call to defendant, which was recorded.[2] During that call, defendant did not admit to sexually touching or raping the victim, and he repeatedly denied her accusations of sexual abuse and rape, calling them lies.

---

[2] Defendant speaks Spanish. All of his statements are translations from his spoken Spanish into English. A translated transcript of the pretext call was admitted, in full, at trial.

Soon after the pretext call, Detective Anderson interviewed defendant at a police station. The interview was video recorded and conducted with the assistance of an interpreter. Portions of the interview were played at trial, three of which are the subjects of defendant's appeal. Before Anderson questioned defendant about the victim's allegations against him, he questioned defendant about the victim's allegations that her uncle, defendant's brother, had also sexually abused her as a child.

Anderson informed defendant that he had arrested defendant's brother and that his brother had admitted to sexually abusing the victim. Anderson told defendant that he was going to ask defendant about the family's sleeping arrangements at the time of the abuse. During defendant's response to that prompt, in which he said that he remembered where people slept, the interpreter consulted with defendant about a word that defendant had said that the interpreter did not understand, and then she said, "It's something along the—like you guys are accusing him of stuff without having any proof." Defendant said that he did not know anything about the alleged sexual abuse by his brother because he worked seven days a week. Anderson told defendant that the victim and his brother had both said that his brother sexually abused the victim and asked defendant if that was "enough." Defendant responded, "I didn't know anything about that until now. * * * I can't fault somebody without having any proof." He then added, "Well, I say if she says and he admitted it, what can you do?" Later, Anderson said, "[Your brother] did what he told me he did. You don't believe it?" Defendant responded, "No."

Anderson then told defendant that the victim accused him of sexually abusing and raping her and said that defendant's laughter in response to that statement was "kind of an unusual reaction." Defendant asked if the detective wanted him to get mad. The detective replied, "Your daughter said you raped her." And defendant responded, "Well, no."

Before trial, defendant sought to exclude three portions of the recorded police interview in which Anderson and defendant discussed defendant's brother. At the pretrial

hearing discussing the admissibility of the disputed portions of the interview, defendant argued that the portions should be excluded because they were not relevant under OEC 401 and because their probative value was outweighed by their unfair prejudicial effect. The three interview portions under dispute were played separately for the court, and the parties argued the admissibility of each interview portion after it was played. Defendant argued as to the first interview portion:

> "[T]his portion of the tape relates to [defendant] being asked questions about whether or not he essentially believed that there's sufficient evidence against [the] uncle to convict him. I don't think that's relevant, even if the Court finds that that's relevant, what [defendant's] opinions are on [defendant's brother's] guilt—we believe that's absolutely more prejudicial than probative for that to be played in front of the jury."

Defendant also argued:

> "If the Court does find that it's relevant, we're asking that under [OEC 403], that the Court do the balancing test and rule that this is obviously more prejudicial than probative.
>
> "For the jury to hear this type of statement from my client regarding whether or not he believes that law enforcement has sufficient proof against his brother with regard to sex abuse against children in the household, we think that's far more prejudicial than probative, and allows the jury to draw inferences that he's just a plain bad person and didn't protect the children, and allowed abuse to occur in his home. And whether or not that's probative of his guilt or innocence in this case—it just is not for the jury to hear."

Defendant had also objected to the admission of the first interview portion on *Miranda* grounds. The trial court addressed only defendant's *Miranda* argument when it explained its decision to admit the first portion of the interview. The trial court did not mention the probative value of the interview portions or their possible unfair prejudicial effects.

After the second interview portion was played for the court, defendant objected on two of the same grounds

as the first portion: "that it's not relevant as to [defendant's] guilt * * *, and it's also—if the Court finds that it's relevant, our position is it's more prejudicial than probative for the jury to hear that information." The trial court responded simply, "I'm going to allow those statements." And, after the trial court viewed the third disputed portion of the interview, defendant briefly reiterated his previous objections against the evidence, arguing, "We believe that it's not relevant to [defendant's] guilt or innocence, and we believe that it's more prejudicial than probative." The trial court admitted the third portion of the interview, stating only, "All right, I'm going to allow those statements in." All three portions of the interview were played for the jury.

During the trial, after the state rested, the state requested the court to dismiss one count of rape and two counts of sexual abuse, which the court did. The state proceeded only on the four counts on which defendant was ultimately convicted.

On appeal, defendant argues that the trial court erred in admitting the interview portions because it failed to make a record demonstrating that it had balanced the probative value of the portions against their unfair prejudicial effect after defendant had objected to their admission and requested that the trial court conduct OEC 403 balancing.[3] The state counters that defendant did not preserve that argument because defendant did not tell the trial court that it was required to make such a record after the trial court had ruled to admit the evidence. The state also argues that the trial court properly admitted the interview portions because they were not unduly prejudicial.

First, we recently rejected the state's similar lack-of-preservation argument in *State v. Anderson*, 282 Or App

---

[3] Defendant also argues that the trial court erred by not concluding that the unfair prejudice of the three interview portions substantially outweighed their probative value as a matter of law. But because we conclude that the trial court erred by failing to make a record that it engaged in the conscious process of balancing the probative value of the evidence against its unfair prejudicial effect that *Mayfield* requires, we do not reach the issue of whether the trial court's decision was one that was within the range of legally correct outcomes. Additionally, we reject without discussion defendant's argument that the trial court erred because the evidence was not relevant.

24, 28 n 3, 386 P3d 154 (2016), and we reject the state's argument here for the same reasons.

Next, as to the merits of the argument, we conclude that the trial court erred by admitting the disputed interview portions without making a record that it had engaged in OEC 403 balancing, which defendant had requested the court to conduct. A trial court errs as a matter of law if it fails to conduct OEC 403 balancing when requested to do so or if it fails to make a record that reflects that the court has conducted the requested OEC 403 balancing. *Mayfield*, 302 Or at 645. In *Mayfield*, the Supreme Court set out an "approved method of analysis that should guide trial courts in their decision-making under OEC 403." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010) (internal quotation marks omitted). That method includes four steps: (1) "analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence"; (2) "determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime"; (3) balance the prosecution's need for the evidence against the prejudicial danger of unfair prejudice; and (4) make a ruling to admit some, all, or none of the proponent's evidence. *Mayfield*, 302 Or at 645.

A trial court need not expressly follow the *Mayfield* four-step analysis as long as "the record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*." *Borck*, 230 Or App at 637. Consequently, we review whether the "'totality of the attendant circumstances indicate that the court * * * engage[d] in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires.'" *State v. Conrad*, 280 Or App 325, 331, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017) (quoting *Borck*, 230 Or App at 638).

In *Conrad*, we held that the record demonstrated that the trial court had engaged in OEC 403 balancing despite the fact that the trial court failed to explicitly make a record of its balancing process. 280 Or App at 331. In that

case, the defendant had filed a pretrial motion *in limine* to exclude a video-recorded interview of two child victims of sexual abuse. *Id.* In the motion, the defendant argued that the recorded interviews had low probative value because they were not conducted under oath and because "the victims' answers were elicited by interviewers." *Id.* The defendant's motion further argued that the videos were unfairly prejudicial because the jury would place undue emphasis on them if they were admitted into evidence. *Id.* The trial court held a hearing specifically to address the defendant's motion to exclude the videos on defendant's OEC 403 argument. *Id.* The trial court stated that it had the defendant's written motion before it and invited additional argument. *Id.* The defendant essentially restated his written argument, and the state contended that the videos were not more prejudicial than probative. *Id.* The trial court denied the defendant's motion by stating, "So that motion is denied." *Id.* (ellipsis omitted).

We determined that *Conrad* presented "the rare case where, despite a very thin record encompassing the trial court's decision to deny defendant's OEC 403 objection, we are satisfied that the court implicitly balanced the 'costs of the evidence against its benefits' as is required by *Mayfield.*" *Id.* at 332. Thus, we concluded that, under those circumstances, the record showed that the trial court had understood the defendant's objection in the written motion and had engaged in the balancing that *Mayfield* requires. *Id.* at 331-32.

In this case, the circumstances are not such that we can say that the trial court made a record that it engaged in the conscious process of OEC 403 balancing to arrive at its decision to admit the interview portions. In *Conrad*, the question before the trial court was a narrow one that had been argued in writing, acknowledged by the court, and remained the same during the defendant's oral argument. Here, however, the record shows that the trial court had no written argument from defendant about his objections to the admission of the interview portions and that the trial court provided no indication that it had engaged in a conscious processing of defendant's OEC 403 argument. The state's trial memorandum anticipated only that defendant would object

to the admission of the interview portions at the pretrial hearing on relevancy and *Miranda* grounds. Additionally, the trial court here was asked to rule on the admissibility of the interview portions in light of defendant's three arguments against the admission of the first portion and two arguments against the second and third portions. In admitting the interview portions, the trial court responded only to defendant's *Miranda* objection to the first interview portion and at no point did the trial court mention the probative value of any of the interview portions or the possible unfair prejudicial effect they might have.

Because the trial court did not have time before the hearing to consider defendant's OEC 403 objections, defendant made more than one narrow argument, and the trial court did not refer to any OEC 403 factor in its ruling, we cannot see from the record that the trial court engaged in the conscious balancing it was required to perform. The only basis to believe that the trial court did engage in OEC 403 balancing is to presume that it had done so solely because the trial court was asked to conduct balancing. The dissent believes that the appearance of balancing is enough. In *Conrad*, however, we explained:

> "[A]lthough *Mayfield* is a 'matter of substance, not form or litany,' that 'substance' is *best* expressed in the form set out in *Mayfield*. That is, given that we review a court's decision under OEC 403 for an abuse of discretion, we can conduct meaningful review only when we can tell that the court exercised its discretion and how it did so. That is the point of *Mayfield*. Obviously, the best way for the trial court to fulfill the 'substance' of *Mayfield* is to articulate on the record, in the manner set forth in *Mayfield*, how it is exercising its discretion. In many cases, the failure to do so will preclude meaningful appellate review, which, among other things, can severely frustrate judicial efficiency."

280 Or App at 331-32 (emphasis in original). Although a trial court is not required to make an explicit record of its thoughts about each of the four OEC 403 balancing analysis steps laid out in *Mayfield*, the record must indicate that the trial court considered the substance of those four steps and "engage[d] in the conscious process of balancing the costs of the evidence against its benefits." *Id.* at 331.

The dissent ignores that a trial court errs as a matter of law if it fails to conduct OEC 403 balancing when it is requested *or* if it fails to make a record that reflects that the court has conducted the requested OEC 403 balancing. The dissent's position would allow us to disregard on review any question other than whether it appears from the record that the trial court was asked to conduct balancing and the trial court's response did not explicitly state that the trial court had chosen to ignore the request.

Indeed, the dissent goes to great lengths to argue that the trial court engaged in balancing on the grounds that the trial court did not explicitly state that it was not required to conduct balancing and because the trial court rejected a fourth portion of the video interview. The trial court responded to defendant's relevance and OEC 403 arguments for exclusion of that portion by stating, "I'm going to side with [defense counsel] on this. I think it brings in a different topic, and so that's going to be excluded." We cannot tell from that statement whether the trial court excluded the fourth portion because it was not relevant or because the danger of unfair prejudice substantially outweighed its probative value.

Furthermore, we do not agree with the dissent that that ruling confirms that the trial court had also consciously engaged in the OEC 403 balancing of the previous three video portions. The mere fact that defendant asked the trial court to conduct balancing is not enough to demonstrate that the trial court engaged in a conscious process of OEC 403 balancing. If we were to conclude that the trial court had conducted a conscious balancing process based on the circumstances we are presented with on the record here, the *Mayfield* requirement would be made meaningless.

The trial court must make a record that reflects an exercise of discretion because, "given that we review a court's decision under OEC 403 for an abuse of discretion, we can conduct meaningful review only when we can tell that the court exercised its discretion and how it did so." *Conrad*, 280 Or App at 331. We cannot presume that the trial court consciously conducted OEC 403 balancing whenever the record shows that it was asked to do so and that the court provided

a ruling on the motion to exclude; we must be able to discern from the record that the court has engaged in OEC 403 balancing. Because the trial court failed to make a record that reflects that it engaged in the requested OEC 403 balancing as *Mayfield* requires, the trial court erred.

Finally, we reject the state's assertion that any error in admitting the interview portions was harmless because the evidence against defendant was substantial. We will affirm a judgment of conviction despite the error if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The focus of our inquiry "is on the possible influence of the error on the verdict rendered." *Id.*

Here, the central issue for the jury was a credibility contest between the victim and defendant. The events had taken place roughly 17 years before the trial, there were no other witnesses to or physical evidence of the acts alleged, the witnesses contradicted each other, and the memories of the witnesses were not unassailable. The jury could have viewed defendant's words as defending his brother, failing to protect his daughter, or as a way to discredit the victim who was also accusing him. Whatever its precise effect on the jury, the evidence was likely to have improperly colored the jury's feelings about defendant. *See Mayfield*, 302 Or at 644 ("Evidence is prejudicial under OEC 403 if it tempts the jury to decide the case on an improper basis," such as the belief that the defendant is a bad person). The admission of the interview portions could have affected the jury's verdict. Had the trial court conducted the balancing that it was requested and required to do, the trial court could have concluded that the danger of unfair prejudice to defendant by the interview portions substantially outweighed their probative effect to prove defendant's guilt. Thus, the trial court's error in admitting the evidence without making a record that it conducted OEC 403 balancing was not harmless.

Reversed and remanded.

**HADLOCK, C. J.,** concurring.

I agree with the majority that this case must be reversed and remanded to the trial court. My reasoning

diverges somewhat from the majority's, however, prompting this concurrence.

I write to address the point on which the majority and dissent disagree: the extent to which the record made in the trial court must demonstrate how the trial court exercised its discretion in admitting evidence over an objection that the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. I concur with the majority's conclusion that the record in this case does not adequately reflect an exercise of that discretion. I do so, however, not because I believe that this case differs significantly from *State v. Conrad*, 280 Or App 325, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017), which the majority strives to distinguish. Rather, I concur because I believe that the Supreme Court's decision in *State v. Hightower*, 361 Or 412, 393 P3d 224 (2017), signals strongly that some of our court's recent opinions may not fully reflect the Supreme Court's command that, when a court's admission of evidence involves a discretionary call under a rule like OEC 403, "the trial court must 'make a record which reflects an exercise of discretion.'" *State v. Barkley*, 315 Or 420, 432, 846 P2d 390 (1993) (quoting *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987)).

In *Mayfield*, 302 Or at 645, the Supreme Court set out four steps that a trial court must follow in determining, under OEC 403, whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice. *See* 286 Or App at 142 (describing the four steps). When a trial court engages in that process, an appellate court will review the trial court's ultimate discretionary call for an abuse of discretion. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017). An appellate court can determine whether the lower court abused its discretion, however, only if the record demonstrates that the lower court did, in fact, engage in the discretionary exercise (*e.g.*, under OEC 403, balancing the probative value of the evidence against the danger of unfair prejudice and other considerations). Thus, in *Mayfield*, the Supreme Court went so far as to suggest that, optimally, a trial court should make findings that reflect its exercise of discretion: "In this state trial judges are granted broad discretion when findings are made on the

record to back up this discretionary call." 302 Or at 647. And the court's decision in *Barkley* repeated *Mayfield*'s admonition that a trial court record must at least reflect the court's exercise of discretion. *Barkley*, 315 Or at 432.

Nonetheless, this court has moved away from requiring that the trial court record affirmatively reflect that the court engaged in an exercise of discretion and has held, instead, that it suffices if the record *implicitly* suggests that the lower court engaged in the discretionary exercise. *See Conrad*, 280 Or App at 332 ("[W]e are satisfied that the court implicitly balanced the 'costs of the evidence against its benefits' as is required by *Mayfield*."). We may discern an implicit exercise of discretion from the totality of the circumstances even when the court does not articulate its reasoning, and it expresses nothing more than its ruling on a motion to admit or exclude evidence, *e.g.*, "that motion is * * * denied." *Id.* at 331 (ellipses in *Conrad*).

Indeed, it now seems that we will conclude that the trial court did *not* engage in a discretionary exercise only in a very limited circumstance—when the record affirmatively demonstrates that the trial court did something other than make a discretionary call. That was the case in *State v. Anderson*, 282 Or App 24, 26, 386 P3d 154 (2016), *rev allowed*, 361 Or 486 (2017) where the trial court stated "it's relevant" when it admitted evidence over an OEC 403 objection. We focused on that statement in concluding that the trial court had admitted evidence *solely* because it was relevant, without conducting the OEC 403 balancing that the party seeking to exclude the evidence had requested. *Id.* at 31-32 ("nothing about the statement 'it's relevant' implies an assessment of the quantum of probative value of the evidence, let alone an assessment of the extent of potential prejudice and a balancing of the competing considerations"; rather, "it implies that the court's analysis never reached beyond the threshold question of 'relevance'"). The dissent takes a similar approach in this case, focusing on the absence of anything in the record that suggests that the trial court did something *other than* balancing probative value against unfair prejudice. In its opinion, we should conclude that the trial court engaged in the discretionary balancing exercise that defendant requested in part because—although the

trial court provided no explanation of its rulings—"there is nothing in the record that suggests that the trial court believed that it did not need to consider the unfair prejudice of the three interview clips before admitting them." 286 Or App at 159 (Armstrong, J., dissenting).

That approach—searching the record for anything indicating what *might* have been the basis for a ruling that the trial court did not explain—has recently led to at least two split decisions from this court, with the majorities and dissents having different perceptions of what the record reveals about the trial court's implicit decision making. This case is one; *Anderson* is the other. *See Anderson*, 282 Or App at 36 (DeVore, J., dissenting) (explaining dissent's view that the trial court "implicitly assessed the prejudicial effect of" the challenged evidence). In my view, the nature of the disagreements in those cases demonstrates that our current approach has become unworkable.

Perhaps more importantly, I do not believe that that approach can be reconciled with the Supreme Court's very recent opinion in *Hightower*. In that case, the defendant sought to assert his right to representation in the middle of a trial. The trial court denied the motion. 361 Or at 414-15. On appeal, we determined that the trial court had implicitly found that granting the request would have disrupted the trial and, therefore, held that the court did not abuse its discretion in denying the defendant's self-representation request. *State v. Hightower*, 275 Or App 287, 294, 364 P3d 29 (2015), *rev'd*, 361 Or 412, 393 P3d 224 (2017). On review, the Supreme Court disagreed. It explained that a trial court has discretion to deny a mid-trial self-representation motion, but—in ruling on the motion—the trial court "should make a record that reflects how it exercised that discretion." *Hightower*, 361 Or at 413. In discussing how appellate courts will review such rulings for an abuse of discretion, the Supreme Court stated that the trial court record "*must* include some indication of how the trial court actually weighed the relevant competing interests involved." *Id.* at 421 (emphasis added). Express findings are not required. However, the court stressed the need for "the record [to] reveal[] the reasons for the trial court's actions." *Id.* "It is not sufficient that an appellate court may be able to speculate

about what *might* have been the trial court's rationale for its decision." *Id.* (emphasis in original).[1]

In my view, *Hightower* should prompt us to rethink our approach to appeals, like this one, that require us to determine whether a trial court actually engaged in a discretionary exercise, like OEC 403 balancing, that a party requested. Under *Hightower*, we may not speculate about whether a trial court exercised its discretion. Rather, we may conclude that a trial court engaged in an appropriate exercise of discretion only if the record affirmatively reflects both that the trial court did, in fact, exercise its discretion *and* the reasons for the court's ultimate discretionary ruling. *See also Mayfield*, 302 Or at 645 ("The judge errs if the judge * * * fails to make a record which reflects an exercise of discretion."). The record in this case reflects neither of those things. Accordingly, I concur with the majority that the appropriate disposition in this case is to reverse and remand. *See Baughman*, 361 Or at 410-11 (explaining scope of trial court's authority on remand).

**ARMSTRONG, P. J.,** dissenting.

I disagree with the majority that the trial court failed to exercise its discretion under OEC 403 when it admitted the three challenged portions of the police interview with defendant. I would conclude that, considering all the attendant circumstances, the record does reflect that the trial court consciously engaged in the OEC 403 balancing that *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), requires. Because I would so conclude, I would also address defendant's argument that the trial court abused its discretion when it admitted the challenged statements. As to that argument, I would conclude that the trial court did abuse its discretion because the low probative value of the

---

[1] The record in *Hightower* indicated that the trial court did not believe it had discretion to grant the defendant's mid-trial self-representation motion. 361 Or at 422. Thus, to the extent that the *Hightower* record demonstrated that the trial court had not exercised its discretion at all, the case is analogous to *Anderson* in that respect. Nonetheless, the Supreme Court did not limit its discussion in *Hightower* to saying that it will reverse when the record demonstrates that the trial court did *not* exercise discretion. Rather, as discussed above, the court stressed repeatedly that the trial court record must demonstrate that the trial court *did* engage in the requested discretionary exercise. *Id.*

evidence was outweighed by its highly prejudicial effect as a matter of law. Because that error was not harmless, I would reverse and remand for a new trial. Accordingly, I dissent.

The majority opinion adequately sets forth the full background facts for the purposes of my dissent, so I do not repeat them here. However, the majority opinion does not provide the full context of the court's pretrial rulings, so I set those proceedings out in detail. Before trial, defendant sought to exclude four clips from his video-recorded interview with the police. The trial court admitted three of those clips and excluded the fourth. Most of the interview involved the police questioning defendant about the allegations of sexual abuse that defendant's daughter (the victim) had made against him. The three clips at issue on appeal involved the police questioning defendant about the victim's allegations of sexual abuse made against defendant's brother (uncle). The fourth clip, which was excluded, involved some discussion about allegations that defendant's son had had sex with one of defendant's daughters, who was not the victim.

The first video clip that defendant sought to exclude from trial included the beginning of the interview to the point that defendant was read *Miranda* warnings. Defendant contended that the failure to give him *Miranda* warnings violated his rights and required the court to exclude the first portion of the interview. In the alternative, defendant sought to exclude a shorter clip of that portion of the interview, arguing that it was irrelevant and that its probative value was outweighed by its unfairly prejudicial effect. As to that second argument, defendant stated as follows:

"My second issue with this portion of the tape relates to my client being asked questions about whether or not he essentially believed that there's sufficient evidence against uncle to convict him. I don't think that's relevant, even if the Court finds that that's relevant, what my client's opinions are on [uncle]'s guilt—we believe that's absolutely more prejudicial than probative for that to be played in front of the jury.

"We think the jury could infer if my client doesn't believe his brother's guilty or if he doesn't—or if he believes that the children are lying, that somehow makes him a bad

person, makes him a bad dad, makes him a person that wouldn't protect the children from someone that was trying to abuse them, and that that portion isn't relevant for the State proving whether or not, on the occasions alleged in the indictment, my client was the actor for the rape, sex abuse, and sodomy."

The challenged portion of the video was then played for the court. That shorter clip of the interview is as follows:

"[DETECTIVE ANDERSON]: But for now I want to kind of get your side of what's going on?

"And there are two parts to this. I think you know your brother was arrested on Monday.

"[DEFENDANT]: No, he just said (indiscernible) told me anything. But now I did find out.

"DETECTIVE ANDERSON: Okay. So I arrested [uncle] on Monday night. And he told me that he sexually abused your daughter, [the victim]. And that this happened when you guys lived in Beaverton.

"So there is—there is two things. The first time that I want to talk to you about is kind of what happened with [uncle] and your kids.

"[DEFENDANT]: Mm-hmm.

"DETECTIVE ANDERSON: And that's the first part I want to talk about to you about—are you okay talking about that with me?

"[DEFENDANT]: Well, what can I say to you?

"DETECTIVE ANDERSON: Well, there are certain things that I need to know about like who lives in what—or who slept in what rooms when you guys moved—

"[DEFENDANT]: Yes, I remember which room because they would sleep—there are only two rooms, so I don't really remember very well because I always worked on Saturday and Sundays, and I would be there tired, and you're asking about what happened about my brother.

"INTERPRETER: He said a word that I didn't understand so I'm going to ask him to clarify.

"[DEFENDANT]: It's something along the—like you guys are accusing him of stuff without having any proof.

"DETECTIVE ANDERSON: Okay.

"[DEFENDANT]: Just because (indiscernible) (talking simultaneously causing audio difficulty)."

Following the viewing of the video clip, the parties and the court discussed defendant's argument that he was subject to custodial interrogation before being read his *Miranda* rights. Then, defendant reminded the court that, if it did not agree with him on that point, he was asking for the more narrow redaction because defendant's statements about uncle were not relevant and their probative value was outweighed by their unfairly prejudicial effect. The state responded that, in the clip, defendant was "trying to minimize the notion that there's any sort of proof, and at times to sort of argue against the notion that delayed disclosures can occur," which the state argued was relevant in that it reflected defendant's desire to diminish the victim's credibility, and to provide additional context for similar statements about proof made by defendant later in the interview and in his pretext call with the victim. The state also asked the court to listen to all the clips first if it had any doubts about admitting them, because the clips were intertwined. The court asked for defendant's response, and defendant argued his point again as follows:

"We first don't think it's relevant at all with regard to my client's case and whether on those occasions he committed the sex acts against [the victim] or not.

"If the Court does find that it's relevant, we're asking that under 40[3], that the Court do the balancing test and rule that this is obviously more prejudicial than probative.

"For the jury to hear this type of statement from my client regarding whether or not he believes that law enforcement has sufficient proof against his brother with regard to sex abuse against children in the household, we think that's far more prejudicial than probative, and allows the jury to draw inferences that he's just a plain bad person and didn't protect the children, and allowed abuse to occur in his home. And whether or not that's probative of his guilt or innocence in this case—it just is not for the jury to hear."

Immediately following that argument, the trial court ruled as follows:

"Okay, well, in regard to the beginning of the interview through 5:34, I'm going to allow those statements, he—you know, he was in custody, but I don't think the questioning—I don't think you can attribute the questioning to the police that they were expecting some type of incriminating statement from him, so those are going to be allowed."

The second section of the video at issue was then played, which is as follows:

"DETECTIVE ANDERSON: But your brother is standing up and telling, 'yeah, I did.' He said he used to drink a lot back then, sometimes 24 beers a night. There would [sic] times that you would ask how he got home, and he didn't know. And he said maybe during [sic] of those times, he might have done something to [the victim] more than what he remembered.

"So I have, you know, not only your daughter telling me that it happened, but your brother is standing up and telling me, 'Yeah, I did it.' I think that's enough.

"Do you agree?

"[DEFENDANT]: I don't have any—any occasion [sic], I mean I didn't know anything about that until now (indiscernible).

"I mean—I can't—I can't fault somebody without having any proof. Like I said I didn't find out about them because I work, I continuously work, I don't have Saturdays and Sundays off, I work every day.

"DETECTIVE ANDERSON: Okay. But knowing that your daughter said that he did it, and that he said he did it, do you think we should have more?

"[DEFENDANT]: If she says that, and (indiscernible) and says (indiscernible) for saying that. (indiscernible).

"How do you say—

"INTERPRETER: He's trying to find a word, and he said how do you say it—he says, 'How do you say it?' I said, 'Well, tell me what you mean, and maybe I can help you find the word.' And he can't find the correct word.

"DETECTIVE ANDERSON: Okay.

"[DEFENDANT]: (indiscernible) about that, and if he admitted that, (indiscernible). Why didn't you guys tell me that before? Why aren't you telling me that until now?

"DETECTIVE ANDERSON: Well, that's something that happens in a lot of our cases."

With regard to that interview clip, defendant argued that,

"with the exception of the *Miranda* argument, my arguments with regard to that section are the same as to the previous section, that it's not relevant as to my client's guilt to the seven charges, and it's also—if the Court finds that it's relevant, our position is it's more prejudicial than probative for the jury to hear that information."

The state responded that its relevance arguments were the same as for the first clip. The state also added that it now realized that defendant's comment about *the victim's* delayed disclosure was not being sought to be redacted, but that the statements in the second clip were nonetheless relevant because they provided "a clearer, more appropriate context" for the whole conversation. The court ruled, "I'm going to allow those statements."

The third interview clip was then played for the court, as follows:

"DETECTIVE ANDERSON: So there could be some conspiracy and that he would unbutton the top of her pants. And then put his hand on her vagina. That's what [uncle] told me.

"So I don't understand why he would have the same embellishment that [the victim] had.

"[DEFENDANT]: That's—I don't even understand that myself.

"DETECTIVE ANDERSON: Okay. Well, I understand it, and I think that's because it happened, that there was a Detective Sherlock Holmes who had a little saying if there are no other logical explanations, the easiest one is probably the truth.

"So, yeah, there could be some big conspiracy about how [uncle] came up with the same story that [the victim] came up with. And maybe aliens probed him and put the idea in his head that he had done that.

"[Uncle] did what he told me he did. You don't believe it?

"[DEFENDANT]:   No.

"DETECTIVE ANDERSON:   We're not asking (indiscernible).

"[DEFENDANT]:   Oh, what you guys are saying about that, I want the alien side."

Following the playing of the third clip, defendant argued that he was making the same two arguments, "that it's not relevant to [defendant's] guilt or innocence, and * * * that it's more prejudicial than probative." The state did not add anything to its prior arguments, after which the court ruled, "All right, I'm going to allow those statements in."

The fourth interview clip that defendant sought to exclude was then played for the court. That portion, which we do not set out verbatim here, included the detective questioning defendant about how long defendant's son had been living with defendant in comparison to the timeframe of when his son was accused of having sex with one of defendant's daughters. As to that portion of the interview, defendant again argued that it was not relevant to whether defendant had sexually abused the victim and that it was more prejudicial than probative because "it brings up a whole [other] layer of sex abuse potentially occurring in this household, but present day rather than later." The state responded that it should be admitted because "[i]t shows his desire to move the topic away from sexual abuse, and it shows his general mental and emotional state during the questioning." The court then ruled, "I'm going to side with [defense counsel] on this. I think it brings in a different topic, and so that's going to be excluded."

On appeal, defendant first argues that the trial court erred in not conducting OEC 403 balancing when it admitted the first three interview clips set out above. Defendant's entire argument on appeal consists of the following two sentences: "Nothing in this record indicates that the trial court applied OEC 403 as required. In failing to do so, the trial court committed legal error." I disagree with defendant and would conclude that the foregoing record, in the complete context of the pretrial hearing, does

show that the trial court engaged in the requested OEC 403 balancing.

As discussed by the majority, the Supreme Court "established [in *Mayfield*] an approved method of analysis that should guide trial courts in their decision-making under OEC 403." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010) (internal quotation marks omitted). The *Mayfield* analysis, however, "is a matter of substance, not form or litany." *State v. Brown*, 272 Or App 424, 433, 355 P3d 216, *rev den*, 358 Or 145 (2015). Thus, a trial court meets the requirements of *Mayfield* if "the record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*." *Borck*, 230 Or App at 637. The record is sufficient if "the totality of the attendant circumstances indicate that the court *** engage[d] in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." *Id.* at 638 (internal quotation marks omitted).

In addressing defendant's argument here, it is important to keep in mind *why* a trial court's determination under OEC 403 must appear on the record. We review a trial court's ruling under OEC 403 for an abuse of discretion. *State v. Williams*, 313 Or 19, 29, 828 P2d 1006, *cert den*, 506 US 858, 113 S Ct 171, 121 L Ed 2d 118 (1992). As such, we "generally defer[] to the trial court's decision whether the probative value of the evidence is substantially outweighed by the potential for prejudice." *Id.* at 29-30. *Mayfield*'s requirement that the court's exercise of discretion under OEC 403 appear on the record exists so that we may meaningfully conduct that appellate review. *State v. Conrad*, 280 Or App 325, 331-32, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017). If the parties' arguments and other attendant circumstances, along with the trial court's ruling, allow us to evaluate whether the trial court abused its discretion, then the record is sufficiently made. *See State v. Gonzalez-Sanchez*, 283 Or App 800, 807, 391 P3d 811 (2017) ("Here, understood in the context of the parties' arguments, the trial court's ruling is sufficient to allow us to evaluate whether, as defendant argues, the court abused

its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.").

Here, the record does establish that the court engaged in "the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." *Borck*, 230 Or App at 638 (internal quotation marks omitted). Part of the "attendant circumstances" that we must take into account here is that defendant raised the OEC 403 issue at a pretrial hearing in which narrow arguments were presented under OEC 403. Although the court did not make an extended ruling, the arguments made by the parties completely frame the court's ruling so that the record is sufficient for us to evaluate whether the trial court abused its discretion in striking the balance that it did.

For each of the three interview clips that the court admitted, defendant argued that (1) whether or not he believed that his brother sexually abused the victim was irrelevant to his guilt or innocence, and (2) if the court believed that the evidence was relevant, that relevance was outweighed by the unfair prejudice of the evidence being improperly used to show that defendant is a "bad guy" who failed to protect his children and allowed abuse in his home. The state responded that the interview parts were relevant because they showed a desire by defendant to minimize the victim's credibility and provided additional context for other similar statements made by defendant. The court, in light of those arguments, stated that it would "allow" them, indicating that the court was consciously exercising its discretion under OEC 403 to admit the evidence.[1] The balance to be evaluated by the court was narrow in scope and obvious in light of the parties' very limited arguments. I would conclude that it did not require more than the trial court's mere rejection of defendant's arguments for us to be able to evaluate

---

[1] I recognize that the court's ruling with regard to the first part of the interview only mentioned defendant's *Miranda* argument. However, the court made its ruling "allowing" that evidence directly after the court asked for, and received, additional argument from defendant about the relevance and unfairly prejudicial effect of that interview clip. In that context, and in the context of the court's other rulings on the same arguments, the ruling is consistent with the court having engaged in OEC 403 balancing with regard to the first clip as well.

the trial court's exercise of its discretion in admitting the video clips. *See Conrad,* 280 Or App at 332 (concluding that record was sufficient to establish that the trial court conducted OEC 403 balancing where the defendant's prejudice argument was limited in scope and thus "it is fair to conclude that the court understood the narrow question before it").

Most tellingly, the court excluded the fourth interview clip based on it accepting defendant's argument that it was unfairly prejudicial. Defendant had argued that the clip was not relevant to whether defendant sexually abused the victim and was more prejudicial than probative because "it brings up a whole [other] layer of sex abuse potentially occurring in this household, but present day rather than later." In excluding the fourth clip, the court stated, "I'm going to side with [defense counsel] on this. I think it brings in a different topic, and so that's going to be excluded." That statement by the court did two things: (1) it accepted defendant's OEC 403 argument for the fourth clip by giving a ruling that echoed defendant's prejudice argument, and (2) by "siding" with defendant "on this," the court confirmed that it had rejected defendant's earlier OEC 403 argument as to the other interview clips, which did not have that additional feature. Based on that exchange, the record establishes that the trial court was considering defendant's OEC 403 arguments with respect to each interview clip, but it was only with respect to the fourth clip that the court agreed with defendant on that point. *See Borck,* 230 Or App at 638 (court's exclusion of part of the letters the defendant sought to exclude "evince[d] a conscious, nuanced consideration of the unfairly prejudicial potential of certain aspects of the letters' content").

Finally, there is nothing in the record that suggests that the trial court believed that it did not need to consider the unfair prejudice of the three interview clips before admitting them. To the contrary, the court's ruling on the fourth clip suggests the opposite—that the court understood what was required and engaged in the required balancing process for each of the interview clips challenged by defendant. Although more explanation by the trial court could have been useful, more was not required for us to be able to

evaluate the court's exercise of discretion in admitting the interview clips.

In so concluding, I disagree with the majority's attempt to distinguish this case from *Conrad*. In *Conrad*, the defendant had brought a motion *in limine* to exclude video interviews of the minor victims. In the motion, the defendant argued that the videos had low probative value because the victims were not under oath and the victims' statements were elicited by the interviewers, and the videos were unfairly prejudicial because the jury could place undue emphasis on those "unreliable" videos. *Conrad*, 280 Or App at 331. At the hearing, the defendant relied on the same arguments, and the state asserted that the videos were "'certainly not more prejudicial than probative.'" *Id*. The court simply stated that the motion was denied. *Id*.

We concluded that the record reflected that the trial court had engaged in OEC 403 balancing as prescribed by *Mayfield* because the defendant's motion set out his OEC 403 balancing issue and the defendant's argument was limited in scope. Also, the court said that it had read the motion before it took additional argument and denied the motion. *Id*. at 332. We noted that "this is not a case in which the attendant circumstances could support the conclusion that the court determined that OEC 403 balancing was not required." *Id*.

As discussed above, this case presents circumstances very close to those presented in *Conrad*—defendant's arguments were limited in scope and presented the OEC 403 issue directly, and the court made its rulings immediately after listening to defendant's OEC 403 arguments. Also, there is no indication in the record that the court concluded that OEC 403 balancing was not required.

In attempting to distinguish *Conrad*, the majority places emphasis on the fact that, in *Conrad*, the defendant had submitted a written motion and there were not additional objections before the court. 286 Or App at 143-44. First, I see no special significance in having a written motion before the court when the OEC 403 balancing argument being made orally is easily understood and limited

in scope. In those circumstances, such as here, a written motion adds little, if anything, to the proceedings. Second, that here defendant also made a relevance argument, as well as a *Miranda* objection to the first interview clip, does not put this case outside the principles established in *Conrad*. In *Conrad*, the defendant's motion *in limine* did include an additional statutory objection to the video; it was not solely focused on OEC 403. *See Conrad*, 280 Or App at 327-28 (noting that the defendant's motion *in limine* sought to exclude the videos under ORS 136.420 and under OEC 403). And, in this case, there are additional indicators that the court engaged in the required OEC 403 balancing that were not present in *Conrad*—*viz.*, defendant raised his OEC 403 arguments several times and the court ruled immediately after each of those arguments, the court used words of discretion in its ruling, and the court's exclusion of the fourth clip was based on defendant's OEC 403 argument. Under those circumstances, "it is fair to conclude that the court implicitly balanced the 'costs of the evidence against its benefits.'" *Id.* at 332 (quoting *Borck*, 230 Or App at 638).

Additionally, this case is distinguishable from *State v. Anderson*, 282 Or App 24, 386 P3d 154 (2016), *rev allowed*, 361 Or 486 (2017), a recent case in which we concluded that the trial court had not engaged in requested OEC 403 balancing. In *Anderson*, the defendant was charged with a crime based on his stealing and using an ATM card. The defendant's defense was that a housemate had done that and not him. The defendant had sought to exclude a video showing him being booked at the police station wearing clothing similar to that of a person depicted using the stolen ATM card. The defendant argued that the probative value of the video was outweighed by the unfair prejudice "that would flow from showing [the] defendant in custody," and because the video depicted the defendant being brought in on an unrelated probation violation. *Id.* at 26. The state argued that the video was not unfairly prejudicial because "it only showed the standard booking process that follows any arrest." *Id.* The court initially indicated that it wanted to view the video to help determine the balancing issue. During the video, the state emphasized that the date stamp on the booking video was a date several days before the defendant's arrest on the

charged crime, and, immediately after that comment, the court admitted the video because "it's relevant." *Id.*

We concluded that that record did not show that the trial court had engaged in the required OEC 403 balancing. *Id.* at 27-28. We emphasized that the court had admitted the evidence based only on its relevance, which is a threshold inquiry that "does not resolve any of the considerations that make up the balancing test that OEC 403 prescribes." *Id.* at 28. Determining that the evidence was relevant did not suggest that the court had engaged in OEC 403 balancing "because the purpose of OEC 403 is to determine when relevant evidence should be excluded." *Id.* We recognized that the balance that the defendant was requesting the trial court to make required assessing and weighing the potentially unduly prejudicial effect of seeing the defendant in restraints and being booked against the highly probative value of helping to identify the defendant as the person who had used the stolen ATM card. In those circumstances, we concluded that the record reflected no determination or balancing of those competing factors, which was error. *Id.* at 29.

As set out above, in this case, unlike in *Anderson*, there are indicators that the trial court was conducting the balancing required by OEC 403. In summary of my earlier points, the trial court used language of discretion when it "allowed" the three clips, it made its rulings immediately following defendant's prejudice arguments, it excluded the fourth clip based on defendant's prejudice argument, and, like in *Conrad*, defendant's prejudice argument was very limited in scope. *Anderson* did not include any of those attendant circumstances. *See Anderson*, 282 Or App at 30-31 (contrasting *Conrad* because, unlike *Conrad* where the limited argument could be answered with a "yes" or "no," the court could have struck a balance only after first assessing "the extent to which the jury would observe that the video depicted defendant in restraints or appreciate that the video meant defendant had been arrested more than once"). And, unlike in *Anderson*, where the court expressly admitted the evidence only on the reason that it was relevant, there was no indication on this record that the court was failing to conduct OEC 403 balancing when it admitted the interview clips. *See Anderson*, 282 Or App at 31-32 (contrasting

*Conrad* based on the court's language because, unlike in *Conrad* where the court "denied" the defendant's motion, the court had explained that it was admitting the evidence because it was "relevant").

I also disagree with the concurrence that *State v. Hightower*, 361 Or 412, 393 P3d 224 (2017), has cast doubt on how we analyze whether a trial court has engaged in OEC 403 balancing as discussed in *Conrad* and *Anderson*. In *Hightower*, the court concluded that a defendant's request to dismiss counsel and represent himself, when made mid-trial, is subject to the trial court's discretion to allow that request. 361 Or at 418-19. With respect to that conclusion, the court made "mention" of two additional observations: (1) "the record must include *some indication* of how the trial court actually weighed the relevant competing inter-ests involved for an appellate court to be able to determine whether the trial court abused its discretion in ruling on a request to waive the right to counsel and proceed *pro se*,"—*viz.*, it is not sufficient if the appellate court has to specu-late about what might have been the trial court's reasons for denying such a request—and (2) if the trial court's decision is predicated on a legal conclusion or fact finding, then a standard of review other than abuse of discretion must be applied to those aspects of its decision. *Id.* at 421 (emphasis added). In *Hightower*, the trial court had made statements that indicated that it had predicated its decision to deny the defendant's request to represent himself on its legal conclu-sion that the defendant did not have a right to invoke his right to self-representation mid-trial. The Supreme Court concluded that those statements did not reflect an exercise of discretion; rather, the statements reflected an erroneous understanding of the law. *Id.* at 422.

Contrary to the concurrence, I do not find anything in *Hightower* that casts doubt on *Conrad* or *Anderson*. The decision in *Hightower* was predicated on *affirmative* state-ments that the trial court had made that indicated it was *not* exercising its discretion. The generalized "mention" by the court that the record must contain "some indication" of a trial court's exercise of discretion in a case involving a defen-dant's invocation of the right to be self-represented does not

provide any indication, strong or otherwise, that the court disapproves of our approach in *Conrad*—a case involving a narrow, straightforward exercise of discretion under OEC 403. Rather, *Hightower* reinforces the notion that, absent some affirmative indication that the trial court was not exercising discretion, we may presume that it did what it was asked to do, as long as the record contains "some indication" of that exercise of discretion. As explained above, the record in this case does contain that indication, and, given the narrow considerations presented to the trial court on the OEC 403 issue, we do not need to engage in speculation to evaluate the trial court's exercise of discretion in admitting the interview clips.

Because I would conclude that the trial court did engage in OEC 403 balancing, I would reach defendant's argument that the trial court abused its discretion when it admitted the three interview clips. As to that argument, I would conclude that the trial court erred because the interview clips should have been excluded as a matter of law.

We use the same *Mayfield* analytic framework that applies to a trial court's decision-making under OEC 403 as a guide in evaluating that decision on appeal. That framework sets out four parts:

> "First, the trial judge should assess the proponent's need for the * * * evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

*Mayfield*, 302 Or at 645. The state, as the proponent of the evidence, had the burden to "convince the court that the evidence not only [was] logically relevant but also that its

probative value [was] not substantially outweighed by any attendant danger of unfair prejudice." *Id.* We review the court's decision to admit the challenged evidence under OEC 403 for an abuse of discretion.

In applying *Mayfield*'s first step to this case, the state failed to demonstrate a need for the three interview clips in which defendant was questioned about his brother's abuse of the victim. The state argued to the trial court that the interview clips were relevant because, in them, defendant sought to minimize that there was any proof of the victim's allegations and to minimize the victim's credibility, and the clips provided context for the rest of the interview, during which defendant made similar statements about proof and the victim's credibility. However, the state did not proffer a particular need for that evidence, and, on appeal, the state makes no argument that it did need the evidence.

As pointed out by defendant, however, the court admitted the balance of the police interview with defendant, during which defendant had clearer and stronger reactions that demonstrated the points that the state sought to advance. Those reactions included defendant laughing when the detective brought up the victim's allegations against defendant, saying that his family has always been "troublesome" and now this "problem" had come up, saying several times that the victim was "embellishing" things, that what the victim was saying was "not true" and "a lie," that what defendant was saying was the truth because there were no witnesses, and that the police were trying to "railroad" him and to get him to "drown" himself. Defendant also repeatedly denied the victim's allegations and pointed out her delayed reporting of the allegations. Thus, the evidence in the three interview clips defendant sought to exclude—which were weaker statements about *defendant* not having proof of what his brother did—added little, if anything, to the state's case in light of defendant's admitted statements about the victim's allegations against him.

The three interview clips also added little to putting the remainder of defendant's interview in context, particularly because, as the state admits on appeal, defendant's statements were "somewhat incoherent and difficult

to understand." In contrast, defendant's statements in the remainder of the interview that sought to impugn the victim's credibility and the state's case against him are easily understood without the context of defendant's "somewhat incoherent" comments when questioned about his brother. *See Mayfield*, 302 Or at 646 (where state put on other evidence of why the victim first denied abuse and then subsequently reported it, the evidence that her sister had also been abused added little to her reason for reporting).

As to the second step, the evidence had a highly unfairly prejudicial effect because it had a high tendency for misuse by the jury. Evidence is unfairly prejudicial under OEC 403 if it has "an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one." *State v. Moore*, 324 Or 396, 407-08, 927 P2d 1073 (1996) (internal quotation marks omitted); *see also State v. Johns*, 301 Or 535, 558, 725 P2d 312 (1986) (stating that evidence is prejudicial under OEC 403 "if it will tempt the jury to decide the case on an improper basis," such as the defendant is a bad person). Particularly given its low relevance to defendant's criminal culpability, a jury viewing that evidence would likely use it as proof that defendant was a "bad guy" or a "bad dad" who failed to protect his children from abuse and, at least in part, deserved punishment for his lack of regard for his daughter (the victim). However, that would be an improper use of that evidence. The state never asserted below that the evidence did not have that effect. On appeal, the state argues only that defendant's statements "are somewhat incoherent and difficult to understand"—made worse by the real time interpretation—and thus are not unfairly prejudicial. That argument, however, only undercuts the state's case because it further shows that the state did not need the evidence and that it could be misused by the jury due to its confusing nature.

As to step three, balancing, I would conclude that the relevance of the three interview clips, as proffered by the state, was so low when compared to its unfairly prejudicial effect that those clips should have been excluded as a matter of law. As noted in *Mayfield*, "trial judges are granted broad discretion when findings are made on the record to back up a discretionary call. However, in this case

the record is insufficient to justify the ultimate decision of the trial judge." 302 Or at 647 (internal citation omitted). Thus, under step four, the trial court erred in admitting the three interview clips. I would also conclude that the error was prejudicial for the reasons indentified by the majority, which means that the error requires a reversal and remand for a new trial. Because, under *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017), the majority reverses the judgment with a limited remand for the court to conduct OEC 403 balancing anew, I dissent from the majority's decision.