LAGESEN, P. J.
*103 As defendant was moving from his rental home after his eviction, defendant's former landlords, the Ms, found that their car window had been shot out with a BB gun. Other former neighbors, the Bs, found that their bedroom window had been shot out by a BB gun. Two months later, another of defendant's former neighbors, T, discovered that his car windows had been shot out with a BB gun not long after a chance encounter with defendant. Believing defendant to be the culprit in each instance, the state charged him with three counts of second-degree criminal mischief, ORS 164.354. At trial, over relevance and OEC 403 objections by defendant, the court admitted 15 photographs depicting *802 the poor condition in which defendant left the rental home when he vacated it. The jury convicted defendant on all counts. On appeal, he assigns error to the trial court's admission of the objected-to photographs, contending that the trial court abused its discretion by admitting the evidence without making the record required by State v. Mayfield , 302 Or. 631, 733 P.2d 438 (1987). On review for legal error, State v. Shaw , 338 Or. 586, 615, 113 P.3d 898 (2005), we agree. We therefore reverse and remand for the trial court to conduct its OEC 403 balancing in a manner that comports with Mayfield , and for such other proceedings that may be required as a result of that exercise.
As noted, the evidence at issue consists of 15 photographs taken of defendant's former rental home on the date that he moved out. The photographs depict a range of different things. Seven of the photographs fairly can be described as showing that defendant left the house in disarray, and with a fair amount of debris and garbage. Three of the photographs appear to depict faulty electrical wiring. One of the photographs is of defendant's motor home. The other four depict damage to the home's carpet, the garage floor, and a window.
At trial, defendant objected to the admission of the photographs, initially arguing that the fact that he left his rental home a mess was not relevant to anything at issue in the case. The trial court permitted defendant to examine defendant's former landlord about the content of the *104 photographs to develop the record in support of his objection. Following that examination, defendant renewed his relevance objection. In addition, defendant argued that, even if the trial court determined that the photographs were relevant, they should be excluded as "unfairly prejudic[ial]." The court then asked the prosecutor to "state [his] position again as to why they should be received." The prosecutor responded that the evidence was relevant for three purposes: to show defendant's plan, motive, and identity:
"Your honor, again this goes towards the plan of destruction of property in retaliation. So we have motive as a reason, other than just propensity under 404, and also identity. And also it goes to the Defendant's plan to destroy the property."
Having heard the prosecutor's explanation of why the pictures were relevant, the court overruled defendant's objection: "All right. The exhibits are, the objection's overruled."
On appeal, defendant assigns error to that ruling.[1] He argues that the trial court abused its discretion by admitting the evidence without creating the record required by Mayfield . He further asserts that, if the trial court's record comports with Mayfield , it demonstrates that the court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The state responds that defendant did not preserve his argument that the trial court failed to develop the record in the manner required by Mayfield because defendant did not specifically alert the court of the need for a more developed record. The state further asserts that the court did not otherwise abuse its *105 discretion in concluding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice.
The state's preservation argument is foreclosed by State v. Anderson , 282 Or.App. 24, 386 P.3d 154 (2016), rev. allowed , 361 Or. 486, 395 P.3d 869 (2017), as the state acknowledges in its brief. Under Anderson , "a request that a court balance the probative *803 value of evidence against the danger of unfair prejudice preserves for appeal a contention that the trial court erred under Mayfield either by failing to conduct the balancing required or by failing to make an adequate record of that balancing." State v. Ydrogo , 289 Or.App. 488, 491, 410 P.3d 1097 (2017) ; see State v. Easley , 290 Or.App. 506, 513 n. 3, 415 P.3d 90 (2018) (same); State v. Salsman , 290 Or.App. 346, 348, 415 P.3d 1099 (2018) (same); State v. Garcia-Rocio , 286 Or.App. 136, 141-42, 399 P.3d 1009 (2017) (same).
As to whether the trial court made the record required by Mayfield , we answer that question by considering "the totality of the attendant circumstances." State v. Conrad , 280 Or.App. 325, 330-31, 381 P.3d 880 (2016). Mayfield demands that a trial court engage in a four-part method of analysis: (1) "analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence"; (2) "determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime"; (3) balance steps one and two; and (4) make a ruling "to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence." Mayfield , 302 Or. at 645, 733 P.2d 438. "Essentially, to comport with Mayfield , the court's record must do two things: (1) demonstrate that the court consciously conducted the required balancing; and (2) allow for meaningful review of that balancing." Ydrogo , 289 Or.App. at 492, 410 P.3d 1097 (emphasis in original).
Here, the record fails to demonstrate either of those things. As was the case in both Anderson and Garcia-Rocio , nothing the trial court said indicates that it engaged in the weighing process required by Mayfield ; the court stated simply that it was overruling the objection. See Anderson , 282 Or.App. at 31-32, 386 P.3d 154 (concluding that the record did not *106 demonstrate that trial court consciously engaged in balancing where court's only statement upon admitting evidence was that the evidence was "relevant"); Garcia-Rocio , 286 Or.App. at 142-46, 399 P.3d 1009 (record did not demonstrate that trial court engaged in required balancing when nothing the court said indicated that it had engaged in balancing, and the attendant circumstances did not support an inference that the balancing had occurred). Additionally, this is not the "rare case" like Conrad in which the attendant circumstances supply the information that the trial court's words do not. See Conrad , 280 Or.App. at 332, 381 P.3d 880 (concluding that it was "the rare case where, despite a very thin record encompassing the trial court's decision to deny defendant's OEC 403 objection," we were sufficiently satisfied by the surrounding circumstances that the court had, in fact, done the required balancing). Notably, here, in response to defendant's objection, the state did not even articulate an argument as to why the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. That is significant because this is not a case in which the probative value of the evidence at issue so obviously outweighs the danger of unfair prejudice that it could be fairly inferred that the court engaged in conscious balancing and reached the obvious answer, at least in the absence of some articulated rationale from the state as to why it should reach a particular conclusion.
Finally, in all events, and perhaps most significantly, the trial court's record is inadequate to allow for meaningful appellate review of the court's assessment of the factors in the Mayfield calculus. The state advanced three theories as to why the 15 photographs were relevant. Yet the trial court offered no indication of which of the theories of relevance that it accepted, and no indication as to its thinking about whether the theories that it accepted called for the admission of all or merely some of the proffered photographs. See Mayfield , 302 Or. at 645, 733 P.2d 438 (stating that the court must, among other things, assess the probative value of the evidence and determine, in view of the risk of unfair prejudice, whether none, all, or some of the proffered evidence should be admitted). That omission is significant because not all of the *107 state's theories were equally strong, and not all of the state's theories applied with equal force to all of the photographs. *804 For example, some of the photographs-those showing that defendant left the rental house in disarray and strewn with debris and garbage-would support an inference that defendant, at the time, had hostile feelings toward his former landlords, providing him with a motive to shoot through his landlords' car window. See State v. Tena , 362 Or. 514, 521, 412 P.3d 175 (2018) (explaining that " 'motive' in this context refers to 'a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act' " (quoting State v. Hampton , 317 Or. 251, 257 n. 12, 855 P.2d 621 (1993) )). But the photographs of the faulty wiring or of the damage to the home's carpet do not readily support the same inference, as that is damage that may well have occurred early in defendant's tenancy, before any of the events in question.
As another example, the state's theory that the photographs showed "plan" was not particularly well developed, even though the Supreme Court has explained (and had explained by the time of defendant's trial) with some precision the requirements that must be met for evidence of prior bad acts to be deemed relevant to show plan. State v. Turnidge , 359 Or. 364, 439-40, 374 P.3d 853 (2016) (distinguishing between "spurious plan" evidence and "true plan" evidence, and setting forth admissibility requirements for each type of evidence). It is not clear that the photographs meet those requirements or that, if they do, they are particularly probative on the issue of plan.
These circumstances give rise to the possibility that the trial court may have rejected defendant's OEC 403 objection for erroneous reasons, such as a mistaken conclusion that some or all of the photographs were relevant for a purpose for which they were not. Without a more explicit explanation from the court as to how it deemed the evidence relevant and why it thought that the strength of the evidence was such that it was not substantially outweighed by the danger of unfair prejudice, we cannot meaningfully review the trial court's decision. That means that the court's *108 record does not satisfy the requirements of Mayfield . Ydrogo , 289 Or.App. at 492, 410 P.3d 1097.
The error was not harmless. The state emphasized the evidence in its arguments to the jury, urging it to infer that the fact that defendant damaged the rental house meant that he was the person who committed the damage to the cars. There is some likelihood that the jury drew the inference that the state urged. As a result, we cannot conclude that there is "little likelihood that the particular error[s] affected the verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003).
Given that conclusion, we must reverse and remand for the trial court to conduct OEC 403 balancing in a manner that comports with Mayfield , and for such other proceedings that may be required as a result of the outcome of that balancing. See State v. Baughman , 361 Or. 386, 410-11, 393 P.3d 1132 (2017) (explaining scope of remand when judgment is reversed for failure to conduct proper OEC 403 balancing); see also State v. Brown , 286 Or.App. 714, 717, 401 P.3d 301 (2017) ("[U]nder Baughman , the appropriate remedy for the trial court's failure to balance under OEC 403 is a limited remand, rather than a new trial.").
Reversed and remanded.

Earlier in the case, defendant raised generalized relevance and OEC 403 objections to anticipated evidence of "prior specific bad acts" showing tensions between defendant and his landlords and neighbors, including acts occurring in the context of the eviction process. The prosecutor indicated that the evidence would show motive or plan. The trial court overruled that objection, stating that defendant could raise it with respect to specific evidence that the state sought to introduce at trial, but that the court was "not going to, in a blanket manner, rule that all such evidence is inadmissible." The court explained that it would need to see "what the evidence is" before determining whether or not it was admissible. That preliminary ruling, to the extent that it is challenged on appeal, was not an abuse of discretion. At that point in time, the parties had not yet supplied the court with sufficient information to make a definitive ruling one way or another.